241 N.J. Super. 557 (1990)
575 A.2d 878
WILLIAM BELL AND SYLVIA BELL, PLAINTIFFS-APPELLANTS,
v.
MERCHANTS AND BUSINESSMEN'S MUTUAL INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 1990.
Decided June 14, 1990.
*558 Before Judges KING, BAIME and KEEFE.
Henry J. Tyler argued the cause for appellants (Clark, Ladner, Fortenbaugh & Young, attorneys, Henry J. Tyler and Douglas K. Walker on the brief).
*559 Jay Barry Harris argued the cause for respondent (Fineman & Bach, attorneys, Jay Barry Harris and Adam M. Share on the brief).
The opinion of the court was rendered by BAIME, J.A.D.
This appeal presents a choice-of-law question relating to the interpretation of a contractual limitations provision contained in a "special multi-peril" policy of insurance. The policy was issued by defendant Merchants and Businessmen's Mutual Insurance Company, a carrier licensed by the Commonwealth of Pennsylvania, to plaintiffs William and Sylvia Bell, residents of that state, and, among other things, covered property in New Jersey which was later seriously damaged by fire. In accordance with both New Jersey and Pennsylvania statutes, the policy provided that no suit or action is sustainable "unless commenced within twelve months next after inception of the loss." In Pennsylvania, the limitations period has been held to begin running from the date of the casualty. Lardas v. Underwriters Insurance Company, 426 Pa. 47, 51, 231 A.2d 740, 741-742 (Pa. 1967). However, in Peloso v. Hartford Fire Insurance Co., 56 N.J. 514, 267 A.2d 498 (1970), our Supreme Court held that the period of limitations is tolled from the time an insured provides notice until liability is formally declined. Finding that Pennsylvania had the greatest interest in governing the issue, the Law Division judge granted defendant's motion for summary judgment on the basis that the limitations period had expired. We disagree and reverse.

I.
The facts are not in dispute. On April 15, 1987, defendant issued a "special multi-peril" policy from its office in Harrisburg, insuring eight properties located in Pennsylvania and two in New Jersey. The policy was purchased through a Freeport, Pennsylvania insurance brokerage concern. All negotiations *560 for the purchase of the policy took place at plaintiffs' offices in Philadelphia.
Pursuant to N.J.S.A. 17:36-5.15 and N.J.S.A. 17:36-5.20, the policy contained separate endorsements with respect to the properties located in New Jersey, encompassing provisions approved by the New Jersey Commissioner of Insurance. The standard form endorsement required that proof of loss be filed within 60 days of the date of the casualty and that payment be made within 60 days thereafter. As we noted previously, the endorsement provided that the insured must institute suit on the policy "within twelve months next after inception of the loss." That language is required by both New Jersey and Pennsylvania statutes. See N.J.S.A. 17:36-5.20 and Pa. Const. Stat.Ann. tit. 40, sec. 636(3). Attached to the policy was a document entitled "Amendatory Endorsement (New Jersey)," which modified the standard form endorsement in various particulars. Among other modifications, the New Jersey amended endorsement required the insurer to make payment "within thirty days of proof of loss." This language paralleled the 1977 amendment to N.J.S.A. 17:36-5.20, which reduced the number of days within which payment must be made from 60 to 30. With respect to the properties located in this state, plaintiffs were requested to pay a "New Jersey surcharge." Also attached to the policy were documents entitled "Pennsylvania Amendatory Endorsement," which modified the provisions contained in the standard form endorsement with respect to the properties located in Pennsylvania. We need not describe these modifications in detail. Suffice it to say, the amended Pennsylvania endorsements were designed to effect changes in the standard form endorsement to make it conform to Pennsylvania law.
One of the two New Jersey properties contained a bulk fuel terminal and an office complex. This property was leased to another named insured, the Bell Fuel Company, a Pennsylvania corporation. This property was damaged by fire set by vandals on May 27 and July 10, 1987. The resulting damage was *561 substantial. Plaintiffs were required by New Jersey fire officials to raze what remained of the structure and to remove a 250,000 gallon oil storage tank. Notices of the fires were given promptly as required by the policy.
There followed an extensive series of communications between plaintiffs and defendant. We need not recount their mutual efforts to settle the resulting claims. We note that plaintiff William Bell apparently cooperated fully in the investigation and ultimately provided substantial deposition testimony on January 11, 1988. Although defendant repeatedly advised plaintiffs that their claims were the subject of "continuing investigation," the insurer cautioned them that its protracted efforts "in no way constituted a waiver" of its defenses under the policy.
Ultimately, defendant denied coverage on September 26, 1988, claiming "numerous policy violations" including plaintiffs' "failure to institute suit within one year" as required by the limitations provision. On December 1, 1988, plaintiffs brought this action, seeking recovery of the proceeds of the policy. The summary judgment dismissing their complaint was entered on August 14, 1989. This appeal followed.

II.
Our analysis begins with the threshold determination pertaining to the choice of law to be applied in resolving the controversy presented. We need not trace in detail the history of choice-of-law principles in contract cases. Over the years interpretation of insurance policies has traditionally been governed by the law of the place of contracting. See, e.g., Buzzone v. Hartford Accident and Indemnity Co., 23 N.J. 447, 452, 129 A.2d 561 (1957). Although that principle has the virtues of certainty and predictability, its mechanical application can lead to unjust results not fairly envisioned by the contracting parties and inconsistent with the fundamental policies and interests of the forum state. What has evolved is a more flexible approach *562 which focuses upon the state which has the most meaningful connections with the transaction and the parties. State Farm, etc., Ins. Co. v. Simmons' Estate, 84 N.J. 28, 34, 417 A.2d 488 (1980). This evolution parallels that in other areas of the law in which our Supreme Court has eschewed slavish devotion to rigid principles in favor of a more realistic governmental interest analysis in choice-of-law decisions. See State v. Curry, 109 N.J. 1, 7, 532 A.2d 721 (1987); Veazey v. Doremus, 103 N.J. 244, 247, 510 A.2d 1187 (1986); Pfau v. Trent Aluminum Co., 55 N.J. 511, 514-515, 263 A.2d 129 (1970); Mellk v. Sarahson, 49 N.J. 226, 228-229, 229 A.2d 625 (1967).
Choice-of-law questions are no longer the product of the application of "ritualistic concepts" such as the theory that the place where the contractual obligation was made governs. Breslin v. Liberty Mut. Ins. Co., 125 N.J. Super. 320, 326, 310 A.2d 527 (Law Div. 1973), rev'd on other grounds, 69 N.J. 435, 354 A.2d 635 (1976). Instead, we have adopted the "most significant relationship" standard of the Restatement Conflict of Laws 2d, § 188 (1971), under which choice-of-law "assessment[s] encompass an evaluation of important contacts as well as consideration of the state policies affected by, and governmental interest in, the outcome of the controversy." Winer Motors, Inc. v. Jaguar Rover Triumph, Inc., 208 N.J. Super. 666, 673, 506 A.2d 817 (App.Div. 1986), quoting State Farm, etc., Ins. Co. v. Simmons' Estate, 84 N.J. at 37, 417 A.2d 488. In the absence of a specific contractual clause expressing the parties' clear intent regarding which state's law should apply, see Kalman Floor Co. v. Joseph L. Muscarelle, Inc., 196 N.J. Super. 16, 21-22, 481 A.2d 553 (App.Div. 1984), aff'd o.b. 98 N.J. 266, 486 A.2d 334 (1985), it must be determined which state has the most significant contacts with the parties and the transaction. McCabe v. Great Pacific Century Corp., 222 N.J. Super. 397, 399, 537 A.2d 303 (App.Div. 1988). The test calls for an evaluation, according to relative importance, of relevant contacts such as the "domicile of the parties and the place of contracting and performing." State Farm, etc., Ins. *563 Co. v. Simmons' Estate, 84 N.J. at 34, 417 A.2d 488. The Restatement identifies seven general considerations germane to conflict of law analysis, viz: (1) the needs of the interstate and international system, (2) the relevant policies of the forum, (3) the relevant policies of the other affected states in the determination of the particular issue, (4) the protection of justified expectations, (5) the basic policies underlying the particular field of law, (6) certainty, predictability, and uniformity of result, and (7) the ease in the determination of and application of the law to be applied. Restatement at § 6.
With specific reference to casualty insurance policies, the Restatement propounds the following general principle:
The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied. [Emphasis supplied.] [Restatement at § 193].
We have underscored the phrase "principal location of the insured risk" because that factor is particularly relevant in the context of multiple risk policies, such as the one in this case, which insures properties in several states. Comment f of § 193 of the Restatement offers what we perceive to be a crucial insight in this respect. The comment provides:
A special problem is presented by multiple risk policies which insure against risks located in several states. A single policy may, for example, insure dwelling houses located in states X, Y and Z. These states may require that any fire insurance policy on buildings situated within their territory shall be in a special statutory form. If so, the single policy will usually incorporate the special statutory forms of the several states involved. Presumably, the courts would be inclined to treat such a case, at least with respect to most issues, as if it involved three policies, each insuring an individual risk. So, if the house located in state X were damaged by fire, it is thought that the court would determine the rights and obligations of the parties under the policy, at least with respect to most issues, in accordance with the local law of X. In any event, that part of the policy which incorporates the special statutory form of the state would be construed in accordance with the rules of construction of that state. [Restatement, § 193 at 613-614, comment f.].
*564 Against this backdrop, we are convinced that New Jersey's contacts with the policy, as it relates to property located in this state, predominate over those of Pennsylvania Of course, we recognize the rule that the law of the place of the contract ordinarily governs the choice of law because this principle generally comports with the reasonable expectations of the parties and furnishes needed certainty and consistency. See State Farm, etc., Ins. Co. v. Simmons' Estate, 84 N.J. at 37, 417 A.2d 488. We also acknowledge that Pennsylvania's contacts perhaps outnumber those of New Jersey. However, we are persuaded that New Jersey, the situs of the property and the risk insured against, has a more significant interest in the dispute. Consequently, "the qualitative, not quantitative," nature of this state's contacts is dispositive in determining that its law should apply. Veazy v. Doremus, 103 N.J. at 248, 510 A.2d 1187.
In reaching this result, we emphasize that a complex set of New Jersey statutes and regulations govern insurance policies covering property located in this state. See McCabe v. Great Pacific Century, 222 N.J. Super. at 400, 537 A.2d 303. Our statute expressly provides that "[n]o policy or contract of fire insurance on any property in this State ... shall be made, issued or delivered by any insurer ... until a copy of the form... has been filed with the Commissioner of Insurance." N.J.S.A. 17:36-5.15. Our Legislature has conferred upon the Commissioner broad authority to approve or disapprove of the form of the policy so submitted. N.J.S.A. 17:36-5.15. Moreover, the Legislature has mandated that "[e]very such fire insurance policy shall contain certain standard provisions" which are statutorily prescribed. N.J.S.A. 17:36-5.20. As we took pains to stress in our recital of the facts, defendant fully acknowledged these requirements by employing the language mandated by our Legislature in the standard form endorsement and by utilizing a New Jersey amendatory endorsement pertaining to the two properties located in this state.
*565 As we noted previously, the paragraph precluding an insured from instituting a lawsuit on the policy "unless commenced within twelve months next after inception of the loss" tracks the language contained in New Jersey's prescribed form. N.J.S.A. 17:36-5.20. The fact that Pennsylvania requires the same language be used with respect to policies covering property located in that state in no way derogates from the conclusion that New Jersey's well-settled interpretation of its mandated provision must be applied when the situs of the risk insured against is located here.
The simple and overriding fact is that the standard fire insurance policy of New Jersey is not the creation of the insurer, but a contract statutorily prescribed in all its details. The terms bind the insurer and insured alike. Our Supreme Court's interpretation of the statutorily mandated language, as set forth in Peloso v. Hartford Fire Insurance Co., therefore, controls. That is particularly so because the Court in Peloso provided what it perceived to be a "fair resolution of [a] statutory incongruity...." 56 N.J. at 521, 267 A.2d 498. In that context, New Jersey has a compelling interest in applying its construction of policy language mandated by its legislature. Obviously, Pennsylvania has no similar or comparable interest. In short, applying New Jersey's judicial interpretation of policy language mandated by its legislature will not transgress whatever minimal interest Pennsylvania may have in this dispute. See Pfau v. Trent Aluminum Co., 55 N.J. at 522, 263 A.2d 129.
Finally, we observe that what is involved here is not a mere regulation of the relations between the insurer and the insured inter partes. Rather, New Jersey has a compelling interest in protecting against fire loss in this state and in promoting expeditious and fair recovery of insurance proceeds when it unfortunately occurs. Moreover, New Jersey's interest is broader than that of the insurer and the insured. New Jersey has a separate and independent interest in protecting the public against dangers attendant to fire damaged property. Legislation enacted in 1984, for example, created priorities in the use *566 of insurance proceeds designed to advance that public interest See N.J.S.A. 17:36-8 to -12.[1]
Having undertaken to provide insurance covering property located in this state, New Jersey's statutes become a constituent element of the contract. See Saffore v. Atlantic Casualty Ins. Co., 21 N.J. 300, 310, 121 A.2d 543 (1956). New Jersey's statutes determine the legal operation of the contract. Ibid. The limitation provision integrated into the contract by force of a New Jersey statute, as a matter of public policy, must be interpreted and given effect in accordance with the intention of the Legislature, as construed by our Supreme Court. The Law Division judge, thus, erred when he refused to apply New Jersey law.

III.
Applying Peloso v. Hartford Fire Insurance Co., the period of limitations began to run on the date of the casualty, but was tolled from the time plaintiffs gave notice until liability was formally declined. 56 N.J. at 521, 267 A.2d 498. Plaintiffs' suit against defendant was brought in timely fashion and should not have been dismissed.
Reversed and remanded.
NOTES
[1] Under certain circumstances, tax liens and demolition costs must first be satisfied before fire insurance proceeds are used for the private purposes of the insured. Municipalities may adopt ordinances which prohibit the release of the fire insurance proceeds in excess of $2,500 on real property if the tax liens and demolition costs are unpaid. See Statement of the Senate Labor, Industry and Professions Committee on Assembly, No. 3233-L. 1985, c. 519.