655 A.2d 483

CURTIS T. BEDWELL AND SONS, INC., PLAINTIFF–RESPON-
DENT, v. GEPPERT BROTHERS, INC., DEFENDANT–APPEL-
LANT, AND AMERICAN INTERNATIONAL GROUP, INC.; NA-
TIONAL UNION FIRE INSURANCE COMPANY OF PITTS-
BURGH, PA; COLUMBIA CASUALTY COMPANY; AND INSUR-
ANCE COMPANY OF NORTH AMERICA, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted February 16, 1995—Decided March 24, 1995.

Before Judges GAULKIN, BAIME and RODRÍGUEZ.

*Labrum and Doak,* attorneys for appellant (*David J. Parsells, Ronald J. Uzdavinis* and *Mitchell S. Berger,* on the brief).

*John J. Spence, Jr.,* attorney for respondent (*Mr. Spence,* on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

Geppert Brothers, Inc. (Geppert) appeals from a summary judgment requiring it to indemnify Curtis T. Bedwell & Sons, Inc. (Bedwell) for costs associated with a hazardous waste clean up conducted under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) (42 *U.S.C.* §§ 9601 to 9675). The principal issue is whether CERCLA prohibits enforcement of indemnification agreements allocating financial responsibilities for the risk of environmental harm. An ancillary issue is whether the indemnitee's independent obligation to pay environmental damage claims under CERCLA's strict liability provisions bars it from obtaining indemnification under a restrictive type agreement which limits the indemnitor's obligation to losses arising out of its own acts.

We hold that indemnification agreements allocating the risks associated with CERCLA claims are enforceable between the contracting parties but not against the government. We also conclude that a party, whose liability under CERCLA is passive or constructive only, is entitled to indemnification under an agreement limiting the indemnitor's obligation to losses resulting from its own acts.

### I.

The salient facts are not in dispute. Bedwell contracted with the City of Philadelphia to construct a new waste treatment facility. In order to complete the project, Bedwell agreed to demolish the existing holding tanks and dispose of the resulting debris. Bedwell subcontracted these duties to Geppert. The agreement required Geppert to remove and dispose of the tanks and their contents. Article 8 of the contract provided that Geppert would indemnify Bedwell for all losses and expenses "imposed by law" arising out of its performance of the agreement.

Geppert subsequently arranged to dispose of the Philadelphia waste materials at the Gloucester Environmental Management Services (GEMS) landfill in Gloucester Township, New Jersey.

The landfill had been ordered by the Department of Environmental Protection and Energy (DEPE) to cease operations. Because GEMS needed "covering materials," Geppert was able to dispose of the Philadelphia debris at a very favorable rate. Geppert transported approximately 1,000 truckloads of Philadelphia waste materials to the GEMS site. Bedwell was not involved in the agreement between Geppert and GEMS and took no part in the disposal operations.

In order to receive payment, Geppert wrote a letter to Bedwell confirming its obligation to indemnify Bedwell regarding its disposal of the Philadelphia waste materials at the GEMS landfill. The letter specified that its obligation under Article 8 of the contract included indemnifying Bedwell for Geppert's "actions in depositing [the Philadelphia debris] at the GEMS landfill site."

In 1984, the DEPE instituted an action in the Chancery Division in which it sought to compel GEMS to rectify the environmental damage caused by its landfill operations. GEMS filed a third party complaint naming the Township of Gloucester as a defendant. In turn, the Township named the City of Philadelphia, Bedwell, and Geppert as third party defendants. The suit was then removed to the United States District Court.

The federal case was settled in 1989. All defendants in that action agreed to establish a trust fund for the clean up of the GEMS landfill. Bedwell contributed to the fund, and then instituted this action to compel Geppert to indemnify it pursuant to Article 8 of the contract. The parties filed cross-motions for summary judgment. The Law Division granted Bedwell's motion and denied that of Geppert. This appeal followed.

## II.

We briefly comment on Geppert's preliminary argument that the court below erroneously applied New Jersey law rather than that of Pennsylvania. Both Bedwell and Geppert are Pennsylvania corporations and the subcontract was entered in that state. Geppert thus asserts that Pennsylvania law should apply.

The short answer to this argument is that we discern no choice of law problem here. Nothing has been presented indicating that the laws of Pennsylvania and New Jersey diverge or are at variance on a material issue in this case. We are thus presented with a false conflict. *See Gilbert Spruance v. Pennsylvania Mfrs.*, 134 *N.J.* 96, 102, 629 *A.*2d 885 (1993); *Veazey v. Doremus*, 103 *N.J.* 244, 248, 510 *A.*2d 1187 (1986); *Mueller v. Parke Davis*, 252 *N.J.Super.* 347, 351, 599 *A.*2d 950 (App.Div.1991).

For the sake of completeness, however, we add that the Law Division correctly applied New Jersey law. Our courts have rejected the traditional view that the law of the place where the contract was entered is determinative of the rights and duties of the parties. *Gilbert Spruance v. Pennsylvania Mfrs.*, 134 *N.J.* at 102, 629 *A.*2d 885; *State Farm, etc., Ins. Co. v. Simmon's Estate*, 84 *N.J.* 28, 36, 417 *A.*2d 488 (1980). Instead, we apply "a more flexible approach that focuses on the state that has the most significant connections with the parties and the transaction." *Gilbert Spruance v. Pennsylvania Mfrs.*, 134 *N.J.* at 102, 629 *A.*2d 885; *State Farm, etc., Ins. Co. v. Simmon's Estate*, 84 *N.J.* at 37, 417 *A.*2d 488; *Bell v. Merchants & Businessmen's Mut.*, 241 *N.J.Super.* 557, 561–62, 575 *A.*2d 878 (App.Div.), *certif. denied*, 122 *N.J.* 395, 585 *A.*2d 395 (1990); *McCabe v. Great Pac. Century Corp.*, 222 *N.J.Super.* 397, 399, 537 *A.*2d 303 (App.Div.1988), *certif. denied*, 121 *N.J.* 611, 583 *A.*2d 312 *and* 121 *N.J.* 612, 583 *A.*2d 313 (1990). "[B]ecause the law of the place of contract 'generally comport[s] with the reasonable expectations of the parties concerning the principal situs [of the transaction,]' (citation omitted) that forum's law should be applied 'unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield.'" *Gilbert Spruance v. Pennsylvania Mfrs.*, 134 *N.J.* at 102, 629 *A.*2d 885 (quoting *State Farm, etc., Ins. Co. v. Simmon's Estate*, 84 *N.J.* 28, 37, 417 *A.*2d 488 (1980)); *Bell v. Merchants & Businessmen's Mut.*, 241 *N.J.Super.* at 564, 575 *A.*2d 878; *see also Restatement (Second) of Conflicts of Laws*, Section 6 (1971).

Applying these principles, we can imagine no interest more compelling than that of New Jersey in determining the availability of funds for the cleanup of hazardous substances within its borders. *Gilbert Spruance v. Pennsylvania Mfrs.*, 134 *N.J.* at 113, 629 *A.*2d 885; *Diamond Shamrock Chemicals v. Aetna*, 258 *N.J.Super.* 167, 198, 609 *A.*2d 440 (App.Div.1992), *certif. denied*, 134 *N.J.* 481, 634 *A.*2d 528 (1993); *Johnson Matthey, Inc. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 250 *N.J.Super.* 51, 57, 593 *A.*2d 367 (App.Div.1991); *Bell v. Merchants & Businessmen's Mut.*, 241 *N.J.Super.* at 564, 575 *A.*2d 878. Since New Jersey has a paramount interest in the remediation of its waste sites, its urgent concern for the health and safety of its citizens extends to assuring that indemnification agreements allocating financial responsibility are effectively enforced. *See Leksi, Inc. v. Federal Ins. Co.*, 736 *F.Supp.* 1331, 1335 (D.N.J.1990). It was reasonably foreseeable that Pennsylvania waste materials would come to rest in New Jersey. Geppert had often utilized New Jersey landfills for this purpose. New Jersey thus has the dominant interest in the controversy and its law applies.

### III.

We next address Geppert's argument that CERCLA bars enforcement of private indemnification agreements. Geppert relies on 42 *U.S.C.* § 9607(e)(1) which provides in pertinent part:

> No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

Our research discloses considerable decisional disarray in construing this section's seemingly contradictory language. Several courts have held that the statute prohibits any agreement purporting "to contractually transfer the liability that one potentially responsible party owes to the [g]overnment or another potentially responsible party," but allows indemnification "between a poten-

tially responsible party and a party not otherwise liable[.]" *See Harley–Davidson v. Minstar,* 837 *F.Supp.* 978, 985 (E.D.Wis. 1993), *rev'd,* 41 *F.*3d 341 (7th Cir.1994). *See also CPC Int'l, Inc. v. Aerojet–General Corp.,* 759 *F.Supp.* 1269 (W.D.Mich.1991). Under these decisions, an indemnity clause is not enforceable under CERCLA unless the party seeking indemnity establishes unequivocally that it is not a potentially liable party under the statute's strict liability sections. Other courts have sought to reconcile the two conflicting sentences by construing them to mean "agreements to indemnify or hold harmless are enforceable between the parties but not against the government." *Beazer East, Inc. v. Mead Corp.,* 34 *F.*3d 206, 211 (3d Cir.1994) (quoting *Smith Land & Improvement Corp. v. Celotex Corp.,* 851 *F.*2d 86, 89 (3d Cir.1988), *cert. denied,* 488 *U.S.* 1029, 109 *S.Ct.* 837, 102 *L.Ed.*2d 969 (1989)); *see also Kerr–McGee Chem Corp. v. Lefton Iron & Metal Co.,* 14 *F.*3d 321, 327 (7th Cir.1994); *United States v. Hardage,* 985 *F.*2d 1427, 1433 (10th Cir.1993); *Hatco Corp. v. W.R. Grace & Co.,* 801 *F.Supp.* 1309, 1317 (D.N.J.1992); *Purolator Prods. Corp. v. Allied–Signal, Inc.,* 772 *F.Supp.* 124, 132 (W.D.N.Y.1991); *Mobay Corp. v. Allied–Signal, Inc.,* 761 *F.Supp.* 345, 356–58 (D.N.J.1991); *Jones–Hamilton Co. v. Kop–Coat, Inc.,* 750 *F.Supp.* 1022, 1027 (N.D.Cal.1990), *aff'd in part, rev'd in part sub nom. Jones–Hamilton Co. v. Beazer Materials & Servs.,* 973 *F.*2d 688 (9th Cir.1992); *Polaroid Corp. v. Rollins Env. Services,* 416 *Mass.* 684, 691–93, 624 *N.E.*2d 959, 964–65 (1993).

We choose the latter view. Specifically, we hold that CERCLA allows parties to privately allocate by contract the risk of loss for liability under that statute, but such agreements may not be enforced against the government. In other words, responsible parties may not altogether transfer their CERCLA liability, but they have the right to obtain indemnification for that liability. Our interpretation of the statute advances the congressional intent to enforce this nation's strong commitment to a clean, safe, and attractive environment while permitting private parties to allocate financial risks among themselves.

## IV.

■ Geppert next contends that the indemnification agreement was not sufficiently broad to encompass losses under CERCLA. In support of this argument, Geppert notes that its indemnification obligation under Article 8 was limited to losses resulting from its own acts. Because Bedwell was independently liable under CERCLA's strict liability provisions, Geppert asserts that it is not obliged to indemnify Bedwell for the settlement amount. Alternatively, Geppert argues that it should be responsible for only one-half of the amount Bedwell contributed to the trust fund.

A brief description of CERCLA's strict liability provisions is necessary for a complete understanding of the issue presented. CERCLA imposes strict liability on "generators," "arrangers," and "transporters" of hazardous waste. 42 *U.S.C.* § 9607(a)(1), (2), (3) and (4). An "arranger" is "any person who by contract . . . arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person." 42 *U.S.C.* § 9607(a)(3). A "transporter" is "any person who accepts . . . hazardous substances for transport to disposal or treatment facilities." 42 *U.S.C.* § 9607(a)(4). With certain exceptions not applicable here, *see* 42 *U.S.C.* § 9607(b), any person falling within these categories is strictly liable for environmental harm caused by the release of hazardous substances.

We reject Geppert's claim that, because Bedwell was independently liable as an "arranger," the loss or damage did not arise out of Geppert's own acts. In reaching this conclusion, we recognize that Article 8 constitutes a "restrictive type" indemnity agreement which holds Bedwell harmless only for the acts or omissions of the indemnitor, Geppert. *See Stier v. Shop Rite of Manalapan,* 201 *N.J.Super.* 142, 152, 492 *A.2d* 1055 (App.Div.1985); *Doloughty v. Blanchard Const. Co.,* 139 *N.J.Super.* 110, 118, 352 *A.2d* 613 (Law Div.1976). We also acknowledge decisions holding that pre-CERCLA indemnification agreements cover CERCLA liability only if such agreements are "worded broadly enough to encompass any and all liabilities, or if environmental liability is clearly

referred to in the [clause at issue]." *Beazer East, Inc. v. Mead Corp.*, 34 *F.*3d at 212; *see also Hatco Corp. v. W.R. Grace & Co.*, 801 *F.Supp.* at 1317–18.

The fact remains that it was Geppert's disposal of the Philadelphia waste materials that triggered Bedwell's CERCLA liability. In contrast, Bedwell's liability can fairly be characterized as passive or "secondary." *See Adler's Quality Bakery, Inc. v. Gaseteria*, 32 *N.J.* 55, 80, 159 *A.2d* 97 (1960); *see also Ramos v. Browning Ferris Industries*, 103 *N.J.* 177, 190–91, 510 *A.2d* 1152 (1986); *Cartel Capital Corp. v. Fireco of N.J.*, 81 *N.J.* 548, 565–68, 410 *A.2d* 674 (1980); *Newmark v. Gimbel's Inc.*, 54 *N.J.* 585, 600–01, 258 *A.2d* 697 (1969); *Port Auth. v. Honeywell Prot. Serv.*, 222 *N.J.Super.* 11, 20, 535 *A.2d* 974 (App.Div.1987); *New Milford Bd. of Educ. v. Juliano*, 219 *N.J.Super.* 182, 187, 530 *A.2d* 43 (App. Div.1987); *cf. De Los Santos v. Saddlehill, Inc.*, 211 *N.J.Super.* 253, 264, 511 *A.2d* 721 (App.Div.1986). Each party breached its independent duty to the government under CERCLA's strict liability provisions, but *inter se* their status is different. However phrased, Bedwell could reasonably expect that as part of its bargain, Geppert would indemnify it for losses resulting from the disposal of the Philadelphia waste materials. *See Stier v. Shop Rite of Manalapan*, 201 *N.J.Super.* at 152, 492 *A.2d* 1055; *Doloughty v. Blanchard Const. Co.*, 139 *N.J.Super.* at 122, 352 *A.2d* 613.

Although we have found no reported New Jersey decision dealing with the precise issue presented, our holding is in accord with those reached by other jurisdictions. *See, e.g., Polaroid Corp. v. Rollins Env. Services*, 416 *Mass.* at 695 n. 5, 624 *N.E.*2d at 966 n. 5; *Scott Galvanizing v. Northwest Enviro.*, 120 *Wash.*2d 573, 578, 844 *P.*2d 428, 431 (1993). We conclude that Bedwell is entitled to indemnification by Geppert for the full amount of its contribution to the trust fund.

## V.

Finally, we reject Geppert's request for a remand to the Law Division for a determination of the reasonableness of the settle-

ment. Geppert had ample notice of the settlement negotiations and never objected to the amount Bedwell contributed. Nothing has been presented to us indicating the settlement was unreasonable. We perceive no basis to further prolong these proceedings.

The judgment of the Law Division is affirmed.