908 A.2d 826 (2006)
SENSIENT COLORS INC., Plaintiff-Appellant,
v.
ALLSTATE INSURANCE COMPANY, f/k/a NORTHBROOK INSURANCE COMPANY, AMERICAN MOTORISTS INSURANCE COMPANY, EXECUTIVE RISK INDEMNITY INC., f/k/a AMERICAN EXCESS INSURANCE CO., FEDERAL INSURANCE COMPANY, FIDELITY & CASUALTY COMPANY OF NEW YORK, FIREMAN'S FUND INSURANCE COMPANY, HARTFORD ACCIDENT & INDEMNITY COMPANY, HIGHLANDS INSURANCE COMPANY, INTEGRITY INSURANCE COMPANY, INTERSTATE FIRE & CASUALTY COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, LLOYDS OF LONDON AND BRITISH COMPANIES, NEW JERSEY PROPERTY LIABILITY INSURANCE GUARANTY ASSOCIATION, OLD REPUBLIC INSURANCE COMPANY, PINE TOP INSURANCE COMPANY, ROYAL INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, WESTPORT INSURANCE CORPORATION, f/k/a PURITAN INSURANCE COMPANY, and ZURICH AMERICAN INSURANCE COMPANY, Defendants-Respondents.
No. A-2052-05T5
Superior Court of New Jersey, Appellate Division.
Argued September 20, 2006
Decided October 20, 2006
Before Judges Parrillo, Hoens and Sapp-Peterson.
Donald W. Kiel argued the cause for appellant
(Kirkpatrick & Lockhart Nicholson Graham, attorneys; Mr. Kiel, of counsel; David S. Kwon and Robert F. Pawlowski, on the brief).
Robert W. Muilenburg argued the cause for respondent, Zurich American Insurance Company, successor in interest to Zurich Insurance Company (Coughlin Duffy, attorneys; Mr. Muilenberg and Rebecca J. Foote, on the brief).
Wilson, Elser, Moskowitz, Edelman & Dicker, attorneys for respondent, Liberty Mutual Insurance Company, join in the brief of respondent, Zurich American Insurance Company.
Smith, Stratton, Wise, Heher & Brennan, attorneys for Executive Risk Indemnity Inc., f/k/a American Excess Insurance Company join in the brief of respondent, Zurich American Insurance Company.
Caron Constants & Wilson, attorneys for Fireman's Fund Insurance Company and Interstate Fire & Casualty Co. join in the brief of Zurich American Insurance Company.
Tressler, Soderstrom, Maloney & Priess, attorneys for Allstate Insurance Company, f/k/a Northbrook Insurance Company joins in the brief of Zurich American Insurance Company as to first-filed rule, but not as to choice of law.
Hardin, Kundla, McKeon & Poletto, attorneys for Royal Indemnity Company, have not filed a brief.
Purcell, Ries, Shannon, Mulcahy & O'Neill, attorneys for Highlands Insurance Company, have not filed a brief.
Bressler, Amery & Ross, attorneys for New Jersey Property-Liability Insurance Guaranty Association, have not filed a brief.
Graham, Curtin & Sheridan, attorneys for Hartford Accident & Indemnity Company & Twin City Fire Insurance Company, have not filed a brief.
Colliau Elenius Murphy Carluccio Keener & Morrow, attorneys for Fidelity & Casualty Company of New York, have not filed a brief.
Dilworth Paxson, attorneys for Westport Insurance Corporation, have not filed a brief.
Clausen Miller, attorneys for Old Republic Insurance Company, have not filed a brief.
Cozen O'Connor, attorneys for Federal Insurance Company, have not filed a brief.
Marshall, Dennehey, Warner, Coleman & Goggin, attorneys for Certain Underwriters at Lloyd's London and Certain London Market Insurance Companies, have not filed a brief.
The opinion of the court was delivered by
PARRILLO, J.A.D..
This is an insurance coverage dispute arising from environmental contamination at a Camden site owned by plaintiff Sensient Colors, Inc., the insured under certain insurance policies covering the site issued by defendants, including Zurich American (Zurich), among others. Relying on these policies, plaintiff requested Zurich to indemnify and defend it in actions brought by the United States Environmental Protection Agency (EPA) to collect monies it had spent cleaning up the Camden site, and by the owners of an adjacent property, Pleasant Gardens, for contamination on their property. Zurich agreed to do so, reserving its right to contest coverage, which it eventually did in a declaratory judgment action filed in New York. Plaintiff then filed suit in New Jersey seeking a declaration of coverage, and damages for breach of contract and fiduciary duty. Plaintiff's lawsuit was ultimately dismissed on Zurich's motion, in favor of the first-filed New York action. Plaintiff now appeals, arguing the motion judge erred in strictly applying the "first-filed" doctrine as an absolute rule rather than as a matter of comity, ignoring its underlying equitable principles. We agree and reverse.
By way of background, since 1922 plaintiff owned and operated a factory at 31st Street and Lemuel Street in Camden where it manufactured various food, drug and cosmetic colorants, organic pigments and dispersions.[1] The factory was located in a commercial-residential zone, within 100 feet of a residential neighborhood and adjacent to a low-income housing project, Pleasant Gardens, with nineteen low-rise apartment buildings housing about 1000 residents. Operations at the plant facility ceased in 1997.
On January 9, 1998, the New Jersey Department of Environmental Protection (DEP) removed from the site 42 drums of acids, bases, solvents and lube oil from a collapsing shed and drained a leaky caustic tank containing sodium hydroxide. Immediately thereafter on January 13, 1998, DEP referred the matter to the EPA, whose assessment revealed several hundred abandoned containers of hazardous wastes, pollutants and contaminants, some of which were leaking.
Because DEP and local government lacked the resources to do the necessary removal, EPA assumed responsibility for the task in July 1998. By December 1998, EPA disposed of all containerized hazardous substances on the site. EPA then embarked on a Phase I soil removal operation on September 26, 2001, removing the top foot of lead-contaminated soil. The soil removal revealed extensive soil staining and buried wastes. EPA eventually removed approximately 71,000 tons of soil and 8,000 tons of debris. At the time, EPA noted that "[a]dditional work may be necessary at the site to address residual contamination."
Further investigation in March 2002 led to the removal of buried petroleum and chlorinated organic sludge waste, and to the excavation of additional lead-contaminated soil. Phase II of the operation began in September 2002. By Spring 2004, plaintiff's site was still contaminated. At the time, EPA and the site's contract purchaser, Westfield Acres Urban Renewal Associates II, L.P. (Westfield Acres), executed an agreement and covenant not to sue, wherein Westfield Acres agreed to demolish the buildings and EPA agreed, to the extent funds were available, to address the remaining soil contamination.[2] With respect to the adjacent property, EPA discovered that the contamination that had leached onto the Pleasant Gardens site was "currently overlain by an asphalt parking lot and will not be addressed under th[e] removal action." Consequently, EPA has not yet remediated the soil on the Pleasant Gardens site.
As a result of the environmental contamination, litigation ensued. On November 26, 2003, Pleasant Gardens sued plaintiff in the Law Division, alleging unlawful disposal of hazardous substances on its residential property. And on July 6, 2004, plaintiff received from EPA a Notice of Potential Liability and Demand for Reimbursement of Costs, stating EPA's total response costs as of May 20, 2004, were $10,867,466.11.
Plaintiff immediately tendered both actions to Zurich, seeking defense and indemnity under comprehensive general liability insurance policies sold by Zurich, a New York company, and brokered in New York by Corroon & Black Company of New York, Inc., a New York insurance broker. These policies were effective from July 1, 1974 to July 1, 1977, and from November 1, 1979 to November 1, 1984. Zurich acknowledged receipt, advised it would participate in the defense of these actions, but reserved its right to contest coverage under its policies pending an investigation and analysis.
On March 8, 2005, Zurich filed a summons and complaint in New York state court against plaintiff and "ABC Insurance Companies 1-10," seeking declaratory judgment that it had no duty to defend or indemnify plaintiff in either the EPA demand action or the Pleasant Gardens lawsuit because the standard pollution exclusion and owned-property exclusion clauses in its insurance policies excluded coverage to plaintiff. Less than two months later, on April 29, 2005, plaintiff filed a declaratory judgment action in New Jersey against Zurich, as well as sixteen other insurance companies who had also issued insurance policies to plaintiff, the New Jersey Property-Liability Insurance Guaranty Association (PLIGA), and XYZ Insurance Companies 1-10, seeking both a declaration that defendants were obligated to defend and indemnify plaintiff, and damages against Zurich for breach of contract and breach of the duty of good faith and fair dealing.[3]
In the New Jersey action, Zurich moved to dismiss plaintiff's complaint in favor of its first-filed New York lawsuit. Plaintiff opposed the application arguing that the two matters were not identical and that full relief could not be afforded in New York, which had no jurisdiction over PLIGA and did not recognize a cause of action for breach of the implied covenant of good faith and fair dealing. In further support of its contention that the case belonged here, plaintiff argued that the site of contamination was exclusively in New Jersey and remediation was not yet complete; EPA's clean-up costs were incurred in the State; evidence and witnesses were located here; New Jersey law would govern; and its lawsuit had advanced further than Zurich's New York action.
In dismissing plaintiff's complaint without prejudice,[4] the motion judge rejected plaintiff's arguments, finding instead:
This is in my view significantly different than the cases we normally see where remediation is involved. In this case, as I understand the facts, the remediation is over and done with. The EPA is seeking some $10 million in monies that it actually costs to do the remediation. There does not appear to be any substantial remediation, further remediation under consideration. So basically, the case boils down to a contract issue, or contracts issues, was there coverage; does the coverage apply to the claim that is being made by the EPA. The insured, the original insured was Kohnstamm, which was a New York Corporation. The policy was issued in New York and the declaratory judgment action was brought by Zurich and others in New York. The burden thus shifts to the plaintiffs to, in this case, to establish that New Jersey has a greater interest in this litigation for this case to go forward.
Were this an ongoing remediation, that would be a consideration. Were there substantial numbers of witnesses in New Jersey, that would be a consideration. Is there any New Jersey public policy that should prevail over New York? I don't see any in this case. Again, primarily, because as I said, the work is over and done with and we're only talking about dollars at this point.
We disagree.
The pendency of a lawsuit in one state does not bar subsequent prosecution of a parallel action in another state. Cogen Techs. NJ Venture v. Boyce Eng'g Int'l, Inc., 241 N.J. Super. 268, 272 (App. Div.), certif. denied, 122 N.J. 358 (1990). To be sure, a party facing serial lawsuits may apply to a court for a stay of a subsequent proceeding. Ibid. As a general proposition, "[when] a foreign action is already pending  whether for one day or one year  it does not make sense for New Jersey courts to plow the same row over again." Bass v. De Vink, 336 N.J. Super. 450, 457 (App. Div.), certif. denied, 168 N.J. 292 (2001). Thus, we have "long adhered to the general rule that the court first acquiring jurisdiction has precedence absent special equities." Id. at 455; see also Yancoskie v. Del. River Port Auth., 78 N.J. 321, 324 (1978); Am. Home Prods. Corp. v. Adriatic Ins. Co., 286 N.J. Super. 24, 34 (App. Div. 1995) (AHP). Impelled by considerations of an orderly and efficient administration of justice, "[t]he general rule favors stays or dismissals in comity-stay situations, in the absence of special equities." Id. at 35.
However, the "first-filed" doctrine is not an absolute rule of comity-stay jurisprudence to be rigidly or mechanistically applied. Rather, the decision to grant the stay rests with the discretion of the court, id. at 33; Cogen Techs., supra, 241 N.J. Super. at 272, "limited only by special equities showing abuse of discretion in that injustice would be perpetrated on the one seeking the stay, and no hardship, prejudice or inconvenience would result to the one against whom it is sought." Gosschalk v. Gosschalk, 48 N.J. Super. 566, 579 (App. Div.), aff'd, 28 N.J. 73 (1958); see also E.E.O.C. v. Univ. of Penn., 850 F.2d 969, 976-77 (3d Cir. 1988).
To obtain a stay based on reasons of comity, a defendant must first establish
(1) that there is a first-filed action in another state, (2) that both cases involve substantially the same parties, the same claims, and the same legal issues, and (3) that plaintiff will have the opportunity for adequate relief in the prior jurisdiction. When a defendant establishes these requisites, it has shown a clear entitlement to comity-stay relief and the judge should grant the stay unless plaintiff demonstrates "special equities."
[AHP, supra, 286 N.J. Super. at 37 (footnote omitted).]
"[T]he burden remains on the moving party to show that the cases and parties are substantially the same in both states. . . ." Id. at 36.
Measured by these standards, we find the motion judge misapplied the "first-filed" doctrine in his dismissal of plaintiff's New Jersey action. As a threshold matter, Zurich has failed to establish a substantial identity of these two causes of action. First, there has been no showing that Zurich could obtain jurisdiction over PLIGA, a party defendant in the New Jersey lawsuit that stands in the shoes of two of the eighteen named insurers  Integrity Insurance Company and Pine Top Insurance Company  who have since dissolved after issuing three of the thirty-five insurance policies at issue here. Indeed, we have been advised that Zurich has since moved to dismiss PLIGA from its New York lawsuit.
Second, no showing has been made that plaintiff's common law claim for breach of duty of good faith and fair dealing is available in New York. In that State, "there is no separate cause of action in tort for an insurer's bad faith failure to perform its obligations under an insurance policy." Cont'l Cas. Co. v. Nationwide Indem. Co., 792 N.Y.S.2d 434, 435 (N.Y. App. Div. 2005); see also Pavia v. State Farm Mutual Auto. Ins. Co., 626 N.E.2d. 24, 27-28 (N.Y. 1993). Although New York does allow a bad faith claim for the failure to settle, "the plaintiff must establish that the insurer's conduct constituted a 'gross disregard' of the insured's interests." Pavia, supra, 626 N.E.2d at 27. In contrast, New Jersey recognizes such a claim "when the failure to pay the policy results from a denial or a withholding of benefits for reasons that are not even debatably valid and the economic losses sustained by the policyholder are clearly within the contemplation of the insurance company." Pickett v. Lloyd's, 131 N.J. 457, 461 (1993). Thus, in New Jersey, "an insurance company owes a duty of good faith to its insured in processing a first party claim." Id. at 467.
To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. * * * implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless * * * indifference to facts or to proofs submitted by the insured.
[Id. at 473 (quoting Bibeault v. Hanover Ins. Co., 417 A.2d 313, 319 (R.I. 1980)).]
In light of these differences in parties and claims, the dual causes of action, in our view, are not sufficiently similar to warrant shifting the burden to plaintiff to establish special equities, or, more basically, to invoke the "first-filed" rule as a bar to plaintiff's New Jersey lawsuit.
Even assuming a substantial identity of parties and claims, the motion judge nevertheless erred in ignoring "special equities" warranting departure from the "first-filed" rule, paramount of which is New Jersey's strong interest in remediating contaminated sites within its borders. In dismissing plaintiff's New Jersey action, the judge found the environmental remediation complete and the litigation simply a contract action about "dollars". He was mistaken on both accounts.
As of the filing of plaintiff's lawsuit in New Jersey, additional remediation was contemplated to clean up the residual contamination at the Pleasant Gardens site and indeed the complaint in Pleasant Gardens' ongoing litigation with plaintiff demands it. Moreover, further remediation of the plant site during the Westfield Acres planned redevelopment was required by the EPA  Westfield Acres covenant not to sue.
In any event, it is immaterial whether remediation is complete or already funded. See Unisys Corp. v. Ins. Co. of North Am., 154 N.J. 217, 221-22 (1998). New Jersey's public policy interest in remediating waste sites within the State remains equally strong regardless of who conducts and incurs the costs of remediation and when. As we noted in Curtis T. Bedwell & Sons, Inc. v. Geppert Bros., Inc., 280 N.J. Super. 391 (App. Div. 1995), appeal dismissed, 143 N.J. 481 (1996), "[New Jersey's] urgent concern for the health and safety of its citizens extends to assuring that indemnification agreements allocating financial responsibility are effectively enforced." Id. at 396.
In an environmental insurance coverage lawsuit involving discharges of wastes from a New Jersey manufacturing plant to four sites all in New Jersey, we determined, for choice of law purposes, that New Jersey had the greater interest, despite the fact that the manufacturer and insurance agent were Pennsylvania corporations and the execution of the insurance policies took place in that State as well. Johnson Matthey, Inc. v. Pa. Mfrs. Ass'n Ins. Co., 250 N.J. Super. 51, 56-58 (App. Div. 1991). Rejecting the insurer's arguments that New Jersey had no interest in the financial aspects of cleaning up toxic waste sites with insurance proceeds rather than the insured's funds, id. at 56-57, we held that
[t]he existence or absence of insurance proceeds can very well determine whether or not a waste site is remediated or a toxic tort victim is compensated. Not every polluter or other person responsible for an environmental wrong is financially sound, or is anxious to make personal assets available to satisfy adjudicated liabilities. New Jersey's paramount interest in the remediation of toxic waste sites, and in the fair compensation of victims of pollution, extends to assuring that casualty insurance companies fairly recognize the legal liabilities of their insureds. . . . [T]he availability of comprehensive liability insurance coverage for the costs of cleaning up hazardous waste sites [is] a question of substantial importance to the public.
[Id. at 57.]
In Unisys, another environmental coverage choice of law case, we rejected the notion that law of the place of contract applied where forty-three percent of the estimated clean-up cost was for New Jersey sites, the remaining amount spread over nineteen other sites in six other states. 154 N.J. at 221-23. The trial judge had applied New York law, evidently persuaded by the fact that because the insured had either already cleaned up or committed funds to clean up the site, there was no immediate danger to New Jersey residents, and that the lawsuit was "essentially for reimbursement and [did] not give rise to the important policy considerations requiring application of New Jersey's substantive law." Id. at 221. We disagreed, citing the fact that two of the waste sites were located in New Jersey. Moreover, "[b]ecause all of the cleanup costs are not yet fully determined, we hesitate to say that New Jersey no longer has an interest in providing funds to remediate the New Jersey sites." Id. at 221-22. Indeed, we reasoned that it would be counter to New Jersey public policy to encourage rapid clean-up of environmental contaminants only to then penalize a company that has advanced funds to do so. Id. at 222.
Finally, we ought not to have a rule of law that distinguishes between the "mom-and-pop" businesses that need access to insurance funds to clean up hazardous materials and companies that appear to have more cash reserves. If the sums reserved prove to be insufficient to clean up the sites, New Jersey would retain an interest in the outcome of the action.
[Ibid.]
Accordingly, we held that, in the case of New Jersey sites, New Jersey law should govern. Id. at 223.
In Bedell, we again rejected the law of the place of contract in favor of the law of New Jersey, whose interest in determining the availability of funds to clean up hazardous substances within its borders was compelling. 280 N.J. Super. at 396. There, two Pennsylvania corporations contracted in Pennsylvania for the disposal of hazardous waste from Philadelphia, which eventually wound up in a New Jersey landfill. Id. at 393-94. In a subsequent action by one of the contracting parties against the other to enforce their indemnification agreement, we held New Jersey law governed in light of the State's dominant interest in remediation of its waste sites and urgent concern for the health and safety of its citizens. Id. at 396.
Our courts have rejected the traditional view that the law of the place where the contract was entered is determinative of the rights and duties of the parties. Instead, we apply "a more flexible approach that focuses on the state that has the most significant connections with the parties and the transaction." "[B]ecause the law of the place of contract 'generally comport[s] with the reasonable expectations of the parties concerning the principal situs [of the transaction,]' (citation omitted) that forum's law should be applied 'unless the dominant and significant relationship of another state to the parties and the underlying issues dictates that this basic rule should yield.'"
[Id. at 395 (citations omitted).]
Aside from New Jersey's vital interest in remediation of its polluted sites, Morton Int'l, Inc. v. General Accident Ins. Co. of Am., 134 N.J. 1, 42, 78-79 (1993), cert. denied, 512 U.S. 1245, 114 S. Ct. 2764, 129 L. Ed. 2d 878 (1994); Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co., 254 N.J. Super. 43, 47 (App. Div. 1992), aff'd, 134 N.J. 96 (1993), other factors that should have been considered by the motion court in the "special equities" analysis include the action's relative nexus, or connection, with the competing forums; such traditional forum non conveniens notions as convenience and fairness to the parties; whether "granting a comity stay would in any way thwart the public policy of New Jersey"; and "how well-advanced to the trial stage the New Jersey action may be in comparison with the first-filed case." AHP, supra, 286 N.J. Super. at 38-39 (citation omitted). In our view, these considerations, on balance, give rise to compelling special equities warranting denial of Zurich's dismissal motion.
New Jersey's contacts with this action are "qualitatively and economically predominant" in comparison to those of New York. Id. at 41. Although plaintiff's predecessor was incorporated in New York and the Zurich policies were negotiated and purchased from a New York broker, plaintiff's principal place of business is in Missouri and its headquarters are now located in New Jersey. Most significant, however, the contaminated site is located exclusively in New Jersey and has yet to be completely remediated.
As noted, in the analogous "conflict of law" context, the location of the waste site carries "very substantial," if not dispositive weight in determining liability insurance matters. HM Holdings, Inc. v. Aetna Cas. & Sur. Co., 154 N.J. 208, 215 (1998) (quoting NL Indus., Inc. v. Commercial Union Ins. Co., 65 F.3d 314, 321 (3d Cir. 1995); Unisys, supra, 154 N.J. at 221-23. See also Restatement (Second) of Conflict of Laws §§ 188(2)(d), 188(2) cmt. e (1971). Thus, even in environmental insurance coverage cases involving multi-site, multi-state environmental pollution, "the governing law is that of the state with the dominant significant relationship according to the principles set forth in Restatement [(Second) Conflict of Laws § 6 (1971)]." Gilbert Spruance Co., supra, 134 N.J. at 102-04. In such situations, a court engages in a "site-specific" analysis, focusing on the site of the insurance risk unless some other State has a more significant relationship to the transaction and the parties. Pfizer, Inc. v. Employers Ins. of Wausau, 154 N.J. 187, 194-96 (1998).
It stands to reason then that where, as here, the insured risk, the environmental damage, and the policyholder are located in the same state, the choice-of-law determination is "straightforward," and the law of the site of the risk applies. Id. at 195. As the Court in Gilbert Spruance, supra, noted:
If the principal location of the insured risk is in a single state for a major portion of the insurance period, that location "is the most important contact to be considered in the choice of the applicable law, at least as to most issues."
[134 N.J. at 104 (quoting Restatement (Second) Conflict of Laws, § 193 cmt. b) (emphasis added).]
By parity of reasoning, the location of the insured risk carries the same substantial weight in the "significant relationship" prong of the comity stay analysis. See, e.g., AHP, supra, 286 N.J. Super. at 39-40, 42. Because, in this case, both the insured risk and environmental pollution are located in New Jersey, this relationship dominates the comparatively minimal contacts of the place of contracting, whose interests are, as a result, only marginally implicated. See Holdings, supra, 154 N.J. at 215; Gilbert Spruance, supra, 134 N.J. at 104.
Moreover, there is a real possibility that a dismissal or stay of this action would thwart the public policy of New Jersey in protecting its environment, regulatory process and policyholders, see Pfizer, supra, 154 N.J. at 207, and frustrate its interest in ensuring adequate financial resources to remediate its toxic waste sites and compensate its pollution victims. See HM Holdings, supra, 154 N.J. at 214. In the first place, there appears to be a real difference in the "choice of law" rules in liability insurance contract cases in each forum, which suggests the application by the New York court in this case of that State's substantive law of contract interpretation. See, e.g., Maryland Cas. Co. v. Cont'l Cas. Co. 332 F.3d 145, 151, 153 (2d Cir. 2003); Olin Corp. v. Ins. Co. of N. Am., 793 F. Supp. 1044 (S.D.N.Y. 1990), aff'd, 929 F.2d 62 (2d Cir. 1991); Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 642 N.E.2d 1065, 1068-70 (N.Y. 1994). Cf. O'Neill v. Yield House, Inc., 964 F. Supp. 806, 810 (S.D.N.Y. 1997); Employers Ins. of Wausau v. Duplan Corp., 899 F. Supp. 1112, 1117 (S.D.N.Y. 1995); Sea Ins. Co., Ltd. v. Westchester Fire Ins. Co., 849 F. Supp. 221, 223 n. 1 (S.D.N.Y. 1994), aff'd, 51 F.3d 22 (2d Cir. 1995); Firemen's Fund Ins. Co. v. Schuster Films, Inc., 811 F. Supp. 978, 984-85 (S.D.N.Y. 1993); Avondale Indus., Inc. v. Travelers Indem. Co., 774 F. Supp. 1416, 1423 (S.D.N.Y. 1991). And furthermore, there is an actual conflict between the laws of New Jersey and New York in interpreting Zurich's standard pollution-exclusion clause, widely used by insurers, Morton, supra, 134 N.J. at 11, which states:
This insurance does not apply . . . (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of . . . toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.
[Ibid.]
As a matter of public policy, New Jersey declines to enforce the clause as written. Morton, supra, 134 N.J. at 30. As such, in New Jersey, provided the damage was not expected or intended, "ongoing injuries or harmful events over an extended period" of time are covered by the policy, and not excluded by the standard pollution exclusion. Reliance Ins. Co. v. Armstrong World Indus., Inc., 292 N.J. Super. 365, 387 (App. Div. 1996). New York, on the other hand, enacted a statute in 1971 requiring policies issued to commercial or industrial enterprises to include the standard form pollution-exclusion clause, N.Y. Ins. Law § 46(13)-(14) (McKinney 1972), as a means of deterring a polluting corporation from continuing to pollute the environment, since "it had to risk bearing itself the full penalty for violating the law." Morton, supra, 134 N.J. at 35.
This difference in public policy is not simply academic but of real consequence to the parties in this case and perhaps best explains Zurich's choice of forum. And although deference to the first-filed action does not predetermine the choice of law issue, it was nevertheless incumbent on the motion judge to consider the divergent public policies of the respective fora, the relative importance of New Jersey's interest in the matter, and whether granting a comity stay would in any way frustrate the realization of that interest. The motion judge failed to take these matters into account and, as such, overlooked special equities requiring retention of jurisdiction in New Jersey.
The remaining considerations also favor allowance of the New Jersey action. Relevant documents are housed with plaintiff's New Jersey attorneys and a number of witnesses are located in this State. Nothing in the record suggests that a New Jersey forum would be inconvenient or unfair to the parties involved. Moreover, at the time Zurich's dismissal motion was heard, the New Jersey action had progressed further than its New York counterpart. Plaintiff had served its amended complaint on all parties and propounded written interrogatories and requests for production of documents. Several defendants had already answered the amended complaint, served written responses and produced documents. The New York action, on the other hand, had not advanced much beyond the filing of Zurich's amended complaint on May 25, 2005, and in fact, the New York court had not yet ruled on plaintiff's motion to stay or dismiss Zurich's first-filed complaint.
In sum, we are satisfied that Zurich has failed to establish a necessary predicate to the application of the "first-filed" rule, namely that the competing lawsuits are substantially identical and that the New York action affords plaintiff the opportunity for the same relief available in New Jersey. Assuming, however, the requisite identity of claims and parties, we are further satisfied that the equitable principles underlying the letter and spirit of the comity rule are better served by rejecting Zurich's attempt to dismiss the second-filed suit. The special equities in this case, most notably the State's dominant interest in the controversy, warrants, in our view, departure from the general rule of deference to the forum first acquiring jurisdiction.
Reversed and remanded.
NOTES
[1] Plaintiff's predecessor in interest was H. Kohnstamm & Co., Inc., which was incorporated in New York on January 28, 1922. After several stock transfers and name changes, plaintiff became Sensient Colors, Inc., headquartered and incorporated in St. Louis, Missouri.
[2] We have been advised at oral argument that all contaminated soil at the plant site has been excavated and all but one stock-pile removed.
[3] On May 25, 2005, Zurich filed an amended complaint in the New York action naming the seventeen insurance companies, PLIGA and XYZ Insurance Companies 1-10. On July 18, 2005, plaintiff brought a third-party complaint in the New Jersey action against the Kohnstamm family shareholders in connection with the Pleasant Gardens action, seeking contribution under the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11, contribution under the New Jersey Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-5, common law indemnification and unjust enrichment.
[4] Subsequently, on February 9, 2006, the New York court denied plaintiff's motion to dismiss or stay Zurich's declaratory action, reasoning that Zurich was the first to file, that its complaint was "apparently not commenced as an attempt to forum shop, by a race to the courts," that a New York forum would not inconvenience plaintiff or its witnesses, and that plaintiff's New Jersey action had already been dismissed.