712 A.2d 645

HM HOLDINGS, INC., U.S. INDUSTRIES, INC., AND KIDDE IN-DUSTRIES INC., PLAINTIFFS–RESPONDENTS, v. AETNA CASUALTY & SURETY COMPANY, AMERICAN MOTORIST INSURANCE COMPANY, CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, INSURANCE COMPANY OF NORTH AMERICA, THE TRAVELERS INDEMNITY COMPANY AND TRAVELERS INSURANCE COMPANY, DEFENDANTS–AP-PELLANTS, AND AETNA LIFE & CASUALTY COMPANY, AIU INSURANCE COMPANY, ALLSTATE INSURANCE COM-PANY (AS SUCCESSOR IN INTEREST TO NORTHBROOK EXCESS AND SURPLUS LINES INSURANCE COMPANY), AMERICAN CENTENNIAL INSURANCE COMPANY, AMERI-CAN HOME ASSURANCE COMPANY, AMERICAN RE–IN-

SURANCE CO., CONTINENTAL CASUALTY COMPANY, CONTINENTAL CORPORATION (AS SUCCESSOR TO HARBOR INSURANCE COMPANY), CONTINENTAL INSURANCE COMPANY, EMPLOYERS INSURANCE OF WAUSAU, EMPLOYERS MUTUAL CASUALTY COMPANY, FEDERAL INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, FIRST STATE INSURANCE COMPANY, GIBRALTAR CASUALTY COMPANY, GLOBE SECURITY INSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, HARTFORD ACCIDENT & INDEMNITY COMPANY, HIGHLANDS INSURANCE COMPANY, HOME INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S AND COMPANIES IN THE LONDON MARKET, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, NEW JERSEY PROPERTY–LIABILITY INSURANCE GUARANTY ASSOCIATION, NORTHBROOK INDEMNITY COMPANY, NORTH. STAR REINSURANCE COMPANY, PRUDENTIAL REINSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, TRANSAMERICA INSURANCE COMPANY, TRANSAMERICA PREMIER INSURANCE COMPANY, UNIGARD MUTUAL INSURANCE COMPANY AND WESTPORT INSURANCE CORPORATION (AS SUCCESSOR IN INTEREST TO PURITAN INSURANCE COMPANY), DEFENDANTS.

Argued December 1, 1997—Decided June 11, 1998.

*Stephen J. Harburg*, a member of the District of Columbia bar, argued the cause for appellants Century Indemnity Company, as successor to CCI Insurance Company of North America and Central National Insurance Company of Omaha (*Graham, Curtin & Sheridan*, attorneys; *Mr. Harburg* and *Joseph R. McDonough*, on the brief).

*Judith F. Helms*, a member of the Illinois bar, argued the cause for appellant American Motorists Insurance Company (*Sellar Richardson*, attorneys; *Wendy H. Smith*, of counsel; *David E. Trainor*, a member of the Illinois bar, on the brief).

*Michael R. Magaril* argued the cause for respondents (*Anderson, Kill & Olick*, attorneys).

*Neil S. Cartusciello* submitted a brief on behalf of appellants Aetna Casualty & Surety Company, The Travelers Indemnity Company and The Travelers Insurance Company (*Shanley &*

*Fisher*, attorneys; *Mr. Cartusciello* and *John M. O'Reilly*, on the brief).

*Arnold C. Lakind* submitted a brief on behalf of *amicus curiae*, New Jersey Public Risk Managers Association (*Szaferman, Lakind, Blumstein, Watter & Blader*, attorneys).

The opinion of the Court was delivered by

O'HERN, J.

This appeal is a companion case to *Pfizer, Inc. v. Employers Insurance of Wausau*, 154 *N.J.* 187, 712 *A.*2d 634 (1998), also decided today. The case is a multistate, multisite environmental coverage case. The principles for decision that we apply are set forth in *Pfizer, supra.* The central question is similar: what law governs (1) whether the sudden and accidental pollution-exclusion clause contained in certain of the insurance policies will bar coverage of the claims and (2) whether the late-notice defense is available to the insurance company.

I

As in *Pfizer, supra,* we merely recite the facts as asserted. The controversy concerns two separate coverage cases brought by U.S. Industries, Inc. (USI) and Kidde Industries, Inc. (Kidde), both of which became subsidiaries of HM Holdings after the coverage period at issue. The policies were issued separately to USI and Kidde. The action seeks coverage for nine sites that were either owned by or received waste from USI and twenty-six sites that were either owned by or received waste from Kidde. The choice-of-law decision rendered by the trial court related to the interpretation of the insurance policies issued to USI as applied to the USI sites.

When the pollution occurred, USI had its headquarters and its principal place of business in New York City. It bought most of the insurance policies through a New York broker. The waste sites are located outside of New Jersey and are said to have no

connection with New Jersey. The waste was generated at a time when USI had no connection with New Jersey. USI's decision-making during most of that period when pollution was occurring took place at USI's New York headquarters or at the waste sites.

The procedural background to the case is similar to that of *Pfizer*. The order arises from proceedings to establish the choice of law to be applied to nine USI sites, which are located in Ohio, Texas (two sites), Pennsylvania, Michigan, Illinois (two sites), Colorado, and Arizona. American Motorists Insurance Company and other insurance companies who joined American Motorists' motion argued that the law of the state where each waste site was located should govern resolution of the issues involving that site. USI cross-moved, contending that New Jersey law should apply. The Travelers companies (Travelers Indemnity and Travelers Insurance Company) and Aetna Casualty & Surety Company opposed USI's cross-motion on the ground that it contravened our holding in *Gilbert Spruance Co. v. Pennsylvania Manufacturers' Ass'n Insurance Co.*, 134 *N.J.* 96, 629 *A.*2d 885 (1993). The Cigna companies (referring to Century Indemnity Company and Central National Insurance Company of Omaha)[1] argued that if the court were to apply the law of one state to all of the USI states, the law should be that of New York and not New Jersey. The remaining defendants opposing the cross-motion, American Motorists, American Home Assurance Company, Granite State Insurance Company, AIU Insurance Company, The Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, and Lexington Insurance Company, argued that the law of the waste site should apply.

After carefully analyzing the laws of the waste sites and finding them "in conflict with the law of New Jersey," the trial court applied New Jersey law to all sites because USI is now a New

---

[1] We take no position on the issue of whether Century Indemnity or the Insurance Company of North America is the proper party in this action. Our references to the corporate parties conform to those used by the trial court for the sake of simplicity and coherence.

Jersey resident. Applying *Spruance, supra,* the court reasoned that when operations are multistate, the location of the risk diminishes and the governing law is that of the state with the dominant significant relationship, according to *Restatement (Second) of Conflict of Laws* section 6 (1971) (*Restatement*). The court noted:

> The states in which the sites are located have a policy interest in securing financial resources to compensate victims of pollution and to remediate its toxic-waste sites. The identification of these states' environmental interests makes clear that the application of New Jersey law would promote the state's environmental concerns by permitting coverage that might otherwise be defeated by the application of the laws of the states where the sites are located.

Recognizing that failure to apply New Jersey law to the pollution clause and notice issues would frustrate New Jersey's public policies, the court held:

> The defendants' failure to include a choice of law clause in any of the policies is evidence that they had no reasonable expectation that any particular state's law would apply to litigation under these policies. As New Jersey residents, plaintiffs are entitled to invoke this state[']s policies of liberal insurance coverage.

The insurance companies counter that USI's connection with New Jersey did not arise until 1986 when USI's headquarters were moved to New Jersey. The move occurred after HM Holdings, which had its headquarters in New Jersey, acquired USI. That was two years after the last of the American Motorist policies had been issued and ten years after the Cigna companies issued their last policy to USI. In addition, the merger took place after any of USI's conduct that might have caused the pollution damage for which coverage is sought occurred. The insurance companies contended that to treat the case as one involving a New Jersey resident was incorrect.

We granted leave to appeal to consider the issues. 150 *N.J.* 20, 695 *A.*2d 664 (1997).

A.

What laws should govern interpretation
of the pollution-exclusion clause?

The analysis is that set forth in *Pfizer* concerning factor one, the competing interests of the states. *Pfizer, supra,* 154 *N.J.* at

198–99, 712 *A.*2d 634. We must consider the laws of three states, New Jersey, New York or that of the waste site. The interests identified by both the Appellate Division and Supreme Court in *Spruance,* to secure financial resources, to remediate New Jersey toxic waste sites, and to compensate the victims of pollution in New Jersey, are not implicated. *See Spruance, supra,* 134 *N.J.* at 100–01, 629 *A.*2d 885 (citing *Gilbert Spruance Co. v. Pennsylvania Mfrs.' Ass'n Ins. Co.,* 254 *N.J.Super.* 43, 47–48, 603 *A.*2d 61 (App.Div.1992)). The nine sites are outside of New Jersey. Despite this fact, the trial court reasoned that application of New Jersey law would foster the policy interests of other states "in securing financial resources to compensate victims of pollution and to remediate [their] toxic waste sites." However, the *Restatement* section 6 ("section 6") analysis focuses on whether the "wholly domestic" concerns of a competing state (such as New Jersey) are advanced by application of its law to the point in issue, *Pfizer, supra,* 154 *N.J.* at 198–99, 712 *A.*2d 634, not whether application of New Jersey law would better serve the environmental concerns of another state than would that state's own law.

The interests identified in *Morton International, Inc. v. General Accident Insurance Co. of America,* 134 *N.J.* 1, 629 *A.*2d 831 (1993), *cert. denied,* 512 *U.S.* 1245, 114 *S.Ct.* 2764, 129 *L. Ed.*2d 878 (1994), in protecting the objectively reasonable expectations of New Jersey policyholders and in deterring misrepresentation of nondisclosure by insurance companies to state regulatory authorities, are implicated in this case. Because HM Holdings is a resident policyholder, the issue is the extent of that interest. As noted, the policies were purchased by USI when it was a nonresident, negotiated outside of New Jersey, and were designed to cover risks not located in New Jersey (at least not these). That the policyholder has since moved to New Jersey does not deprive the policyholder of the protection of New Jersey law, but tempers the weight to be given to that factor. *See Allstate Ins. Co. v. Hague,* 449 *U.S.* 302, 337, 101 *S.Ct.* 633, 653, 66 *L. Ed.*2d 521, 546 (1981) (Powell, J., dissenting) (stating that if a policyholder *"could*

choose the substantive rules to be applied to an action ... the invitation to forum shopping would be irresistible"). If the situation were otherwise, and New Jersey (where the policyholder had moved) had the more restrictive view of coverage under the pollution-exclusion clause, we are certain that New Jersey's laws should yield to the laws of the waste sites that would have the more dominant relationship to the transaction and the issue.

Concerning factor two, the interests of commerce would be hindered if New Jersey law were applied to determine a dispute with which it did not have a dominant significant relationship. Given that the location of the waste site carries "very substantial weight" in the section 6 analysis, *NL Industries, Inc. v. Commercial Union Insurance Co.*, 65 *F*.3d 314, 321 (3d Cir.1995), and that the policyholder did not have a significant business presence in New Jersey when the policies were purchased or when the "occurrences" under the policies took place, New Jersey's interests are less significant than those of the waste sites. *But see J. Josephson, Inc. v. Crum & Forster Ins. Co.*, 293 *N.J.Super.* 170, 679 *A*.2d 1206 (App.Div.1996) (holding that New Jersey law governs choice of law when New Jersey company hires licensed hauler to transport waste to Pennsylvania).

Concerning factor three, certainly, in this case the justifiable expectations of the parties at the time when they entered the insurance contracts could not have been that New Jersey law would govern issues of coverage in Illinois or Michigan.

■ Finally, although we do not minimize the case-management difficulties for the trial court, for the reasons stated in *Pfizer* we do not believe that the interests of judicial administration should overcome the other factors. On balance, the section 6 factors point toward application of the law of the waste sites.

### B.

#### What law governs the late-notice defense?

Again, the analysis is almost identical to that in *Pfizer.* The laws of New Jersey and New York are in conflict. We may safely

assume again that the laws of the waste sites will follow either one of the two rationales outlined in *Pfizer, supra,* 154 *N.J.* 205–06, 712 *A.*2d 634. Because the purpose to be served by New Jersey's late-notice rule is the protection of a New Jersey policyholder and the conduct about which we are concerned (the late notice) may have occurred at a time when the policyholder was a corporate resident of New Jersey, New Jersey's policies would be fostered by application of its late-notice law. Those policies do not affect the formation of the contract, but rather its performance. Application of New York's law, would interfere with the public policy reflected in New Jersey's law without a corresponding benefit to New York domestic concerns. The lead insurance companies are not New York based companies. The "wholly domestic" concerns of New York are not advanced when its late-notice doctrine is applied to parties not resident in New York, concerning waste sites not in New York. Concerning factor three, we cannot say that the justified expectations of insurance companies would be frustrated if a prejudice rule were applied to the late-notice issues. A Connecticut court recently observed:

> [A]pplication of [the law of the waste site] is consistent with the protection of the justified expectations of the parties; *which is a basic principle underlying the field of contracts.* The policies at issue in this case do not contain choice of law clauses; accordingly, it is not possible to give effect to the parties' subjective expectations with respect to choice of law. It is possible, however, to give effect to their *justified* expectations regarding performance of substantive contract obligations. While an insurer's expectation regarding protection from liability in cases in which an insured's failure to provide timely notice has prejudiced the insurer is justified, such expectation of protection from liability in cases in which the lack of notice has not prejudiced the insurer is not justified. Requiring a showing of prejudice protects the justified expectations of the parties and at the same time prevents one party from reaping an unjust windfall.
>
> [*Reichhold Chems., Inc. v. Hartford Accident & Indem. Co.,* 243 *Conn.* 401, 703 *A.*2d 1132, 1141–42 (1997) (citations omitted) (emphasis added).]

We conclude that either New Jersey law or the law of the waste sites should govern the late-notice issues. If the law of the waste sites is similar to New York's, it should yield to New Jersey's unless the insurance companies are domestic companies of the waste sites.

We appreciate the problem of judicial administration that our conclusion poses. "[C]ommonality of governing law with respect to each site" is a desired goal. *CBS, Inc. v. Crum & Forster, Inc.*, No. AM–711–94T2 (App.Div. March 20, 1995) (reproduced in Defendant's Appendix p. 407). But that goal ought not override the balance of section 6 factors. *Restatement* section 193 directs attention to the "particular issue" when making a choice of law. For the reasons stated in *Pfizer*, we believe that the late-notice issues will often be site specific. If problems of judicial administration prove to be too great, we would reconsider on a proper record whether under the "site-specific" analysis there should be a common governing law as to each site.

We reverse the order of the Law Division and remand the matter for further proceedings in accordance with this opinion.

*For reversal and remandment*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.