

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-3-1998

# NL Ind Inc v. Comm Union Ins Co

Precedential or Non-Precedential:

Docket 97-5028,97-5029,97-5030,97-5031

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"NL Ind Inc v. Comm Union Ins Co" (1998). *1998 Decisions*. Paper 214.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/214

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 3, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 97-5028, 97-5029, 97-5030 & 97-5031

NL INDUSTRIES, INC.

      Appellant in No. 97-5030,

v.

COMMERCIAL UNION INSURANCE COMPANY;
STONEWALL INSURANCE COMPANY; AETNA CASUALTY
& SURETY COMPANY OF AMERICA; LEXINGTON
INSURANCE COMPANY; MIDLAND INSURANCE
COMPANY; FIRST STATE INSURANCE COMPANY;
INSURANCE COMPANY OF NORTH AMERICA; AMERICAN
CENTENNIAL INSURANCE COMPANY; UTICA MUTUAL
INSURANCE COMPANY; NATIONAL UNION FIRE
INSURANCE COMPANY; INTERNATIONAL INSURANCE
COMPANY; INTERNATIONAL SURPLUS LINES INSURANCE
COMPANY; EVANSTON INSURANCE COMPANY

COMMERCIAL UNION INSURANCE COMPANY,
      Third-party plaintiff

v.

CERTAIN UNDERWRITERS AT LLOYD'S; INSURANCE
COMPANY OF NORTH AMERICA; *ALLSTATE INSURANCE
COMPANY, solely as successor in interest to Northbrook
Excess and Surplus Insurance Co., formerly known as
Northbrook Insurance Company,
      Third-party defendants

      International Insurance Company,
      Appellant in No. 97-5028

      Insurance Company of North America,
      Appellant in No. 97-5029

Commercial Union Insurance Company,
Appellant in No. 97-5031

*Amended per Clerk's order of May 1, 1997

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. No. 09-cv-02125)

ARGUED APRIL 20, 1998

Before: GREENBERG, NYGAARD and WEIS,
Circuit Judges.

Filed September 3, 1998

MARK E. FERGUSON, ESQUIRE
 (ARGUED)
Bartlit, Beck, Herman, Palenchar
 & Scott
54 West Hubbard Street, Room 300
Chicago, Illinois 60610

LESTER C. HOUTZ, ESQUIRE
Bartlit, Beck, Herman, Palenchar
 & Scott
511 16th Street, Suite 700
Denver, Colorado 80202

SAMUEL A. HAUBOLD, ESQUIRE
Kirkland & Ellis
200 East Randolph Drive,
 Suite 6100
Chicago, Illinois 60601

2

ANDREW T. BERRY, ESQUIRE
KEVIN J. CONNELL, ESQUIRE
McCarter & English
100 Mulberry Street
Four Gateway Center
Newark, New Jersey 07101

Counsel for NL Industries, Inc.

STEVEN R. BROCK, ESQUIRE
 (ARGUED)
RICHARD S. FELDMAN, ESQUIRE
Rivkin, Radler & Kremer
EAB Plaza, West Tower
Uniondale, New York 11556-0111

Counsel for Commercial Union
Insurance Co.

STUART COTTON, ESQUIRE
DIANE P. SIMON, ESQUIRE
 (ARGUED)
MITCHELL S. COHEN, ESQUIRE
Mound, Cotton & Wollan
One Battery Park Plaza
New York, New York 10004

Counsel for International Insurance
Co.

PAUL R. KOEPFF, ESQUIRE
 (ARGUED)
O'Melveny & Myers
153 East 53rd Street, 53rd Floor
New York, New York 10022

JOSEPH R. McDONOUGH, ESQUIRE
Graham, Curtin & Sheridan
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962

Counsel for Insurance Co. of
North America

TERRY M. COSGROVE, ESQUIRE
 (ARGUED)
Peterson & Ross
200 East Randolph Drive,
 Suite 7300
Chicago, Illinois 60601

Counsel for Certain Underwriters at
Lloyd's of London

EDWARD G. D'ALESSANDRO,
 ESQUIRE
D'Alessandro & Jacovino
147 Columbia Turnpike, Suite 100
Florham Park, New Jersey 07932

Counsel for International Surplus
Lines Insurance Co.

JOHN H. DENTON, ESQUIRE
Connell, Foley & Geiser
85 Livingston Avenue
Roseland, New Jersey 07068

Counsel for Aetna Casualty & Surety
Co. of America

MICHAEL J. O'MARA, ESQUIRE
Crawshaw, Mayfield, Turner, O'Mara,
 Donnelly & McBride
2201 Route 38, Suite 300
Cherry Hill, New Jersey 08002

Counsel for Lexington Insurance Co.

STEPHEN D. CUYLER, ESQUIRE
Cuyler, Burk & Matthews
Four Century Drive
Parsippany, New Jersey 07054

Counsel for Northbrook Excess and
Surplus Insurance Co.

4

OPINION OF THE COURT

WEIS, Circuit Judge,

In this case, we are called upon to answer as a
controlling question of law whether the law of the forum--
New Jersey--applies to liability insurance policies covering
environmental damage claims arising out of numerous sites
in many states. We answer that, in the circumstances here,
New Jersey choice of law rules point to the law of the state
where the insured had its principal place of business and
executed the policies. If, however, that law differs from that
of the state where the waste site is located, then the law of
the waste site will apply.

This is the second of two declaratory judgment actions
brought to establish the extent of insurance coverage for a
number of claims against NL Industries arising out of its
nationwide lead processing activities. Instituted by NL,
these actions were brought in the United States District
Court for the District of New Jersey under diversity
jurisdiction. NL was incorporated in New Jersey until
recently and still has some industrial plants there, but its
national headquarters and principal place of business are
located in New York. The insurance contracts were
negotiated and executed by NL with a New York broker.

NL initially filed the actions against Commercial Union
Insurance Company, which then joined as third-party
defendants, among others, certain underwriters at Lloyd's
of London and Insurance Company of North America. NL
later amended its complaint to add as defendants several
other carriers, including International Insurance Company,
International Surplus Lines Insurance Company, and
Lexington Insurance Company.

In the first case, we determined that under the law of the
forum--New Jersey--coverage for the product liability
claims at issue in that litigation would be governed by the
law of the state of contracting--New York. NL Indus. v.
Commercial Union Ins. Co., 65 F.3d 314, 329 (3d Cir. 1995)
(NL (I)). However, we also concluded that New Jersey might

5

treat environmental claims differently in light of the substantial weight given to the law of the states where the contamination occurred. Id. at 321-23.

In this case, NL sought coverage for environmental pollution at 93 sites in 28 states. One of the carriers has informed us that the numbers have increased to 202 sites in 34 states. Thirty-two sites are located in New Jersey.

In the course of pretrial proceedings, the parties agreed to select as representative locations contaminated sites in Illinois and Oregon to explore the choice of law questions basic to the litigation. Specifically, the parties dispute the meaning of the pollution exclusion and the late notice provisions in the policies. Differing interpretations of the two provisions by the various states involved presented the district court with complex choice of law problems.

The district court granted partial summary judgments limited to choice of law issues, concluding that the law of the contaminated sites--Illinois and Oregon--would apply, rather than that of New York or New Jersey. See NL Indus. v. Commercial Union Ins. Co., 938 F.Supp. 248 (D.N.J. 1996), reconsidering 926 F.Supp. 1213 (D.N.J. 1996). The court then certified as a controlling question of law under 28 U.S.C. S 1292(b) whether the law of Illinois or Oregon, respectively, applied when interpreting the pollution exclusion and late notice clauses of the policies. We agreed to accept the question for review.

I.

At that time, in addition to the discussion in NL (I), we had the benefit of two decisions applying New Jersey choice of law rules to environmental coverage issues. See General Ceramics, Inc. v. Firemen's Fund Ins. Cos., 66 F.3d 647 (3d Cir. 1995); Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n. Ins. Co., 629 A.2d 885 (N.J. 1993). Neither of these cases, however, involved coverage claims for multiple sites in multiple states.

After oral argument in the case presently before us, the New Jersey Supreme Court issued three opinions that removed much of the uncertainty surrounding application

6

of its choice of law principles to multi-site, multi-state, environmental insurance coverage cases. Those cases presented facts closely analogous to those here, so we need not do more than briefly apply their holdings. See Pfizer, Inc. v. Employers Ins. of Wausau, 712 A.2d 634 (N.J. 1998); Unisys Corp. v. Insurance Co. of N. America, 712 A.2d 649 (N.J. 1998); H.M. Holdings, Inc. v. Aetna Cas. & Sur. Co., 712 A.2d 645 (N.J. 1998); see generally Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (in a diversity case, law of the forum provides the applicable choice of law rules).

In Pfizer, a corporate policyholder contended that New Jersey law should apply to its claim for insurance coverage in an environmental contamination case. The insured had its headquarters and principal place of business in New York and the policies were negotiated there, but it also had substantial operations in many other states, including New Jersey. Three states' laws competed for application--New Jersey's, New York's, and the waste site's. As in this case, the choice of law issues focused on interpretation of the pollution exclusion and late notice clauses in the policies.

Following Gilbert Spruance, the New Jersey Supreme Court held that the answer to the choice of law questions should be determined by analyzing the factors set forth in the Restatement (Second) of Conflict of Laws  SS 193 and 6. Pfizer, 712 A.2d at 638-39. Under section 193, the court should apply the law of the place that " `the parties understood . . . to be the principal location of the insured risk . . . unless some other state has a more significant relationship under the principles stated in [section] 6 to the transaction and the parties.' " Id. at 638 (citing Gilbert Spruance, 629 A.2d at 885). This site-specific approach to choice of law is straightforward when the policyholder's operations are confined to one state. Id.

When an insured's business is "predictably multistate," however, less significance attaches to the principal location of the insured risk. Id. In that scenario, New Jersey law requires a "careful site-specific determination, made upon a complete record," of the state with the dominant, significant relationship to the parties and transaction under section 6 of the Restatement. Id. at 639 (internal quotation and

7

citation omitted). The factors relevant to that inquiry are:
(1) the competing interests of the relevant states; (2) the
national interests of commerce among the several states; (3)
the interests of the parties; and (4) the interests of judicial
administration. Pfizer, 712 A.2d at 639-40.

Assessing these interests, the Pfizer Court declined to
apply New Jersey insurance law because that state's wholly
domestic concerns were not at stake in a dispute involving
foreign waste sites and out-of-state parties. On the latter
point, the Court found that the policyholder's substantial
operations in New Jersey did not implicate New Jersey's
interests to the extent that the company's principal place of
business in New York affected that state's interests. Id. at
641, 644. Because New Jersey was a disinterested state,
application of another state's law would not impinge on the
commercial interests of New Jersey. Id. at 641-42.

The parties' fair expectations did not favor application of
New Jersey law either, but weighed in favor of the law of
the waste sites or that of the state of contract execution. Id.
at 642. Nor did the interests of judicial management require
consistent application of New Jersey law. Id. at 642-43.

On the other hand, New York had an interest in applying
its insurance law because Pfizer was a New York
policyholder, the contract was negotiated and executed in
New York, and the purpose of New York's interpretation of
the pollution exclusion clause would have been served by
the application of New York law. Pfizer, 712 A.2d at 641.
For that reason, applying another state's law that clashed
with that of New York might have hindered interstate
commerce. Id. at 641-42. In addition, the parties could
reasonably have expected the law of the state of contracting
to apply. Id. at 642.

At the same time, the Court acknowledged that the state
where the contamination occurred had an interest in
applying its law, and that applying contrary law from
another jurisdiction could frustrate interstate commerce.
Moreover, in the absence of a choice of law provision in the
contract, a policyholder "would expect that it would be
indemnified under the law in effect at the place where
liability is imposed." Id. at 642.

8

In short, the court determined that New York and the state where the waste sites were located both had a significant relationship to the coverage issues, but that New Jersey did not.1 The Court ultimately resolved which state had the most significant relationship with the following rule: "In the event of a conflict between the law of New York and the law of the waste site, the law of the waste site should be applied because under the site-specific approach it would have the dominant significant relationship to the issue." Id. at 643.

The Court applied these principles in Unisys, holding that the law of the waste sites defeated the law of New York, which was the state of contract execution. In that case, New Jersey law applied to those sites located in New Jersey. None of the parties had any other relevant connection to the forum. 712 A.2d at 651-53.

HM Holdings presented a different factual situation. In that case, the policyholder, which had its principal place of business in New York during the period when contamination of the waste sites occurred, later moved to New Jersey. 712 A.2d at 646-47. Because the insured had become a New Jersey "domiciliary," the Court determined that, insofar as the late notice issue was involved, that state had an interest in applying its pro-policyholder law that would be frustrated by New York's pro-carrier interpretation of the clause. Id. at 648-49. New Jersey, said the Court, had an interest in performance of the contract because the insured was a domestic policyholder. Therefore, the law of New Jersey or the waste site controlled on that issue. If the law of the waste site was similar to that of New York, it should yield to New Jersey law unless the insurance company was a domestic company of the state of contamination. Id. at 649. Insofar as the pollution exclusion was concerned, however, the Court held that the

_____

1. The Court applied similar analysis when considering the question of late notice, but in order to create a conflict of laws, assumed without deciding that New York was an interested state. Pfizer, 712 A.2d at 643-44. But see HM Holdings, 712 A.2d at 649 (New York has no interest in applying its late notice rule unless the carriers are New York based or the waste sites are in New York).

9

after-acquired domicile did not affect its analysis and the law of the waste site was still applicable. Id. at 647-48.

The Pfizer trilogy makes it unnecessary for us to re-plow the ground so thoroughly explored in Gilbert Spruance, NL (I), and General Ceramics. Consequently, we proceed directly to the coverage issues at hand.

II.

The Pollution Exclusion

Under a typical pollution exclusion clause, coverage for pollution is excluded unless the discharge is "sudden and accidental." The conflicts problem arises because states construe the "sudden and accidental" language differently. Some jurisdictions interpret "sudden" to mean "unexpected," while others emphasize the temporal aspect of "sudden." As may be expected, where contamination at a particular site occurred gradually, interpretation of that clause can have a substantial bearing on coverage. Here, we face a conflict in construction among the laws of New Jersey, New York, and the waste sites. As instructed by Pfizer, we assess the four categories of relevant interests to determine which state has the most significant relationship to the issue.

A.

Just as in Pfizer, NL is not a New Jersey policyholder, but has its headquarters and principal place of business in New York where the policy was executed and issued. Although it has a presence in New Jersey, from an analytic standpoint its local activities are no different, perhaps less substantial, than those of the policyholder in Pfizer.

As we remarked in NL (I), "New Jersey's only connection with this litigation is that NL was incorporated and had some operations there." 65 F.3d at 327. New Jersey has a long history of attenuating the incorporation contact when conducting choice of law analysis. Gantes v. Kason Corp., 679 A.2d 106, 110-11 (N.J. 1996); Heavner v. Uniroyal, Inc., 305 A.2d 412, 414 n.3, 418 (N.J. 1973); Deemer v. Silk City

10

Textile Mach. Co., 475 A.2d 648, 651–53 (N.J. Super. Ct. App. Div. 1984); cf. Gore v. United States Steel Corp., 104 A.2d 670, 676 (N.J. 1954) (forum non conveniens case). Although such minimal contacts may have a bearing in other contexts, they "must be viewed in perspective." Pfizer, 712 A.2d at 644; see also Veazey v. Doremus, 510 A.2d 1187, 1189–90 (N.J. 1986) (parties' contacts relevant only if they relate to policy of the law).

To the extent that New Jersey is the location of some of the contaminated sites, its interest in applying its domestic law does not differ from that of other polluted locations. The circumstances here are so similar to those in Pfizer that its analysis governs. New York and the state of the waste site have strong interests in having their law apply.

B.

The interests of commerce parallel those in Pfizer. Commerce would be hindered if New Jersey law were applied to determine a dispute with which that state "does not have a dominant and significant relationship." Pfizer, 712 A.2d at 642. Again, New York and the state of the waste site have an interest in having their law apply.

C.

The interests of the parties focus on their justified expectations and the need for predictability of result. As in Pfizer, the insurance contracts are silent on the applicable choice of law. Consequently, "in the absence of a choice–of–law provision, a policyholder would expect that it would be indemnified under the law in effect at the place where liability is imposed. The policies contain sweeping declarations of coverage that should be given effect where the risks [arose]." Id. at 642. This consideration militates in favor of having the law of the waste site apply.

D.

The final category examines judicial administration. We do not wish to underestimate the burden the trial court will face when cataloging and ruling on the applicable law at

11

each of the many sites involved in this litigation. We recognize, however, that the court and the parties are free to work out practical ways to reduce and consolidate the issues. Indeed, as counsel for one of the parties explained in the district court: "We agreed to a case management structure in which two sites would go to trial first . . . so we could look at the outcome in those cases and hopefully get guidance from which we could all reach a global solution to this hundred-forty-some claim case." J.A. 1766-67.

We doubt that the laws of each of the waste sites contain multiple, esoteric distinctions. Rather, we expect that there will be a few interpretations applicable to various groups of sites. We agree with Pfizer that, although case management problems for the trial court are substantial, they can be resolved through the ingenuity and skill of court and counsel.

In conclusion, we follow Pfizer's lead and hold that (except with respect to New Jersey waste sites) New Jersey law does not govern interpretation of the pollution exclusion clause. The choice of law is between New York (the place of contracting and location of the insured's headquarters) and the state of contamination. "In the event of a conflict between the law of New York and the law of the waste site, the law of the waste site should be applied because under the site-specific approach it would have the dominant significant relationship to the issue." Pfizer, 712 A.2d at 643.

III.

Late Notice

Most liability policies require the insured to give prompt notice of an event that falls within the scope of coverage. Some states, including New Jersey, require a carrier to prove that it has been prejudiced by the untimely notice before it may deny coverage. Other jurisdictions, including New York, do not require a demonstration of prejudice in order to assert the defense of late notice.

12

As Pfizer acknowledged, states where waste sites are located may have adopted one of these two approaches. New Jersey added the element of prejudice for "the protection of New Jersey policyholders." Id. at 644. As mentioned above, however, the fact that Pfizer did business in New Jersey and was incorporated there did not make it a New Jersey policyholder entitled to the protection of New Jersey law at the expense of the laws of the competing states. That analysis applies with equal force here. Accordingly, we conclude that the law of the waste site should govern if it differs from the law of New York.

HM Holdings is not to the contrary. In that case, the insured was a "domiciliary" of New Jersey at the time notice was given. For that reason, the Court held that New Jersey law should apply. In this case, NL remained headquartered in New York and no significant change reduced its strong New York presence.

IV.

To summarize, we answer the certified questions as follows:

> (1) Under the facts and circumstances of this case, New York law provides the rule for deciding whether the pollution exclusion clauses in the respective policies bar coverage for environmental contamination. If a conflict exists between New York law and the law of the waste site, then the law of the waste site shall apply.

> (2) Under the facts and circumstances of this case, New York law provides the rule for deciding whether the notice of claims were timely under the insurance contracts. If a conflict exists between New York law and the law of the waste site, then the law of the waste site shall apply.[2]

_____

2. International and International Surplus stand in a different position than the other carriers because they are headquartered in Illinois and do not insure the Oregon site. In addition, they are solely interested in the question of late notice because their policies do not contain pollution

13

Accordingly, we will remand this case to the district court for further proceedings consistent with this Opinion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

exclusion language similar to that of the other carriers. Finally, their policies provide coverage on a "claims made," rather than an "occurrence," basis, which may be relevant when considering the effect of late notice. Accordingly, Illinois law should apply when construing the late-notice provisions applicable to these carriers. See HM Holdings, 712 A.2d at 649.

14