719 A.2d 1265

PHARMACIA & UPJOHN COMPANY, PLAINTIFF–APPELLANT, v. AMERICAN INSURANCE COMPANY, ASSOCIATED INDEMNITY CORP., AND FIREMAN'S FUND INDEMNITY CORP., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 15, 1998—Decided October 8, 1998.

Before Judges PRESSLER, BROCHIN and KLEINER.

*Kevin H. Michels* argued the cause for appellant (*Michels & Hockenjos*, attorneys; *Mr. Michels*, on the brief).

*Marybeth Witecki* argued the cause for respondents (*Caron, McCormick, Constants & Goldberg*, attorneys; *Ms. Witecki*, on the brief).

PER CURIAM.

This is an environmental-coverage case involving the single issue of choice of law. Plaintiff Pharmacia & Upjohn Company (Pharmacia), successor in interest to the insured, Electro–Nucleonics, Inc. (ENI), brought this declaratory judgment action seeking an adjudication that its liability for environmental contamination at a Pennsylvania site is covered by the insurance policies issued to ENI by defendants, American Insurance Company, Associated Indemnity Corp., and Fireman's Fund Indemnity Corp. (collectively, the insurer). It appeals, on leave granted, from a partial summary judgment entered by the Law Division declaring that Pennsylvania law rather than New Jersey law governs the interpretation of the pollution-exclusion clause of the policies. The New Jersey Supreme Court, in the *Pfizer* trilogy,[1] has recently clarified the principles governing choice of law in insurance-contract interpretation and, more particularly, insurance

---

[1] *Pfizer v. Emp. Ins. of Wausau,* 154 *N.J.* 187, 712 A.2d 634 (1998); *HM Holdings v. Aetna Cas. & Sur.,* 154 *N.J.* 208, 712 A.2d 645 (1998); *Unisys Corp. v. Insurance Co.,* 154 *N.J.* 217, 712 A.2d 649 (1998). We note that because of the imminence of the Supreme Court's decision in these cases, we continued the oral argument of this appeal until the parties had the opportunity to file supplemental briefs addressing the import of the trilogy.

contracts providing coverage for environmental damage caused by the insured. We are satisfied that those principles mandate the application of New Jersey law to the policies here. Accordingly, we reverse and remand.

The material facts are simple and undisputed. ENI, a research and development corporation, was incorporated in New Jersey in 1960, and its principal place of business was then and for many years after in Fairfield, New Jersey. While most of its manufacturing facilities were initially located in this state, by the mid–1980's, in addition to its twelve manufacturing sites in New Jersey, it operated five in Maryland and several in other states. Its policies of insurance for the years 1984 through 1989 were negotiated on its behalf by Richard Abajian, an ENI officer based in Fairfield, with the Purpose Agency in Fair Lawn, New Jersey. All negotiations were conducted in New Jersey, the policies were delivered to ENI in New Jersey, and the premiums were billed by and paid to Purpose in New Jersey. The policies themselves were silent as to the specific locations of the risks.

In 1989, ENI merged with another New Jersey corporation, Pharmacia Acquisition Corporation, which was a subsidiary of Pharmacia, Inc. Pharmacia Acquisition Corporation's name was then changed to Pharmacia ENI Diagnostics. The principal place of business remained in Fairfield. By the end of 1989, the corporate name was changed to Pharmacia Diagnostics, Inc. and again in 1992 to 350 Passaic Associates, Inc. All pertinent aspects of its doing business remained essentially the same. In 1996, Pharmacia Diagnostics, Inc. lost its New Jersey identity by merger into Pharmacia & Upjohn Company, a Delaware corporation with its principal place of business in Michigan.

The gravamen of Pharmacia's coverage claims against the defendants arises out of a clean-up action taken by the Pennsylvania Department of Environmental Protection (PDEP) in respect of a Pennsylvania company, Industrial Solvents and Chemical Company (ISCC), which reprocessed commercial solvents at its Pennsylvania location. In 1990 the PDEP notified ENI that it was one of

the parties potentially responsible for the contamination at the ISCC site by reason of its having shipped to it waste acetone for reprocessing from one of its Maryland manufacturing sites. More specifically, the PDEP claimed that ENI had shipped approximately 13,720 gallons of waste acetone to ISCC between January 1985 and May 1989. The three defendants had, collectively, issued general casualty and liability policies to ENI and its New Jersey corporate successors for the period in question, and ENI looked to its insurers for coverage of the PDEP claim. The insurers disclaimed, primarily, as we understand it, on the basis of Pennsylvania's narrow interpretation of the "sudden and accidental" language of the then standard pollution exclusion of general casualty and liability coverage. In any event, plaintiff ultimately settled the claim against it by the PDEP by paying about $50,000 to the ISCC Site Buy–Out Settlement Trust Fund. It then commenced this declaratory judgment action, alleging that the more liberal New Jersey interpretation of the pollution-exclusion provision applied.[2] Defendants moved for partial summary judgment declaring the applicability of Pennsylvania law. The trial judge, apparently of the view that the site of the contamination was the dispositive choice-of-law factor, granted that relief.

The Supreme Court in *Pfizer v. Emp. Ins. of Wausau,* 154 *N.J* . 187, 197, 712 *A.*2d 634 (1998), has made clear its rejection of a bright-line rule mandating application of the law of the place where the contamination has occurred. It opted instead for a case-by-case analysis of the factors informing choice of law decisions prescribed by *Restatement (Second) of Conflict of Laws* § 6 (1969) in order to identify, consistently with the principles of § 193 of the *Restatement,* the state with the dominant interest in the matter. It is unnecessary for us to retread the ground so recently

---

2 For a succinct discussion of the difference between the Pennsylvania and New Jersey approaches to "sudden and accidental" in the context of the pollution exclusion, *see, e.g., General Ceramics Inc. v. Firemen's Fund Ins.,* 66 *F.*3d 647, 651–652 (3d Cir.1995); *J. Josephson v. Crum & Forster,* 293 *N.J.Super.* 170, 187–188, 679 *A.*2d 1206 (App.Div.1996); *Johnson Matthey v. Pennsylvania Mfrs. Ass'n,* 250 *N.J.Super.* 51, 54, 593 *A.*2d 367 (App.Div.1991).

and carefully covered by the Supreme Court. Suffice it to say that the methodology laid out by the Court in *Pfizer* requires consideration of the competing interests of the states involved, the national interests of commerce among the states, the interests of the parties and the interests underlying contract law, and the interests of judicial administration. *Pfizer, supra,* 154 *N.J.* at 198, 712 *A.*2d 634. We consider this record not only in the light of these factors but also in the light of *Pfizer's* express approval of *General Ceramics Inc. v. Firemen's Fund Ins.,* 66 *F.*3d 647 (3d Cir.1995), and of this court's adoption of the *General Ceramics* rationale in *J. Josephson v. Crum & Forster,* 293 *N.J.Super.* 170, 679 *A.*2d 1206 (App.Div.1996).

To begin with, we point out that § 193 of the *Restatement* requires application of the law of "the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties. . . ." Irrespective of what the parties' understanding here may have been in respect of the principal location of the risk in view of ENI's out-of-state operations, we think it plain that in any event New Jersey's interest, as defined by *General Ceramics* and *J. Josephson,* is of paramount significance. As expressed by *J. Josephson, supra,* 293 *N.J.Super.* at 188, 679 *A.*2d 1206, New Jersey's liberal interpretation of the pollution-exclusion clause

was born of a concern for insureds who purchased coverage based on the state's regulatory approval of the standard CGL policies. The underlying policies prompting this interpretation by our high court were the protection of the New Jersey insureds and the integrity of New Jersey insurance contract negotiations, as well as promotion of honest dealings with this State's regulatory agencies.

*See also Morton Int'l, Inc. v. General Accident Ins.,* 134 *N.J.* 1, 75, 629 *A.*2d 831, *cert. denied,* 512 *U.S.* 1245, 114 *S.Ct.* 2764, 129 *L.Ed.*2d 878 (1994). Both *General Ceramics* and *J. Josephson,* moreover, concluded that since no interest implicated by the more restrictive law of the state in which the contamination occurred would be offended by application of New Jersey's more liberal law,

New Jersey's interest in the protection of a resident insured doing its primary business here and negotiating its insurance here must predominate.

Plaintiff here, like the plaintiffs in *General Ceramics* and *J. Josephson*, was, both at the time the policies were negotiated, issued, and paid for and at the time of the occurrences giving rise to its liability, a New Jersey corporation headquartered in this state and conducting the majority of its business activities here. We do not consider as significant to the otherwise indisputable applicability of the *General Ceramics* and *J. Josephson* analysis the disparate fact that the subject waste was not generated in this state but rather in Maryland. First, the policies themselves do not differentiate coverage based on the site of the waste generation. Second, at the time of the operative events, the insured's major manufacturing activities were conducted in New Jersey, and that waste was also predictably dumped out-of-state. Moreover, and most important in the context of the analysis, is the undisputed fact that irrespective of where the waste was generated and dumped, the insured was a New Jersey corporation that negotiated its insurance coverage in New Jersey and was hence entitled to look to the law of this state, intended and designed to protect New Jersey policyholders.

 Nor do we deem significant plaintiff's 1996 acquisition of the insured, which until then had remained a New Jersey corporation despite its subsequent mergers and name changes. It may well be that plaintiff itself has an insufficient nexus with New Jersey to invoke and rely on its law. But we are satisfied that the insured's corporate status change, long after all of the operative events, including the negotiation and purchase of the insurance and the incurring of the underlying liability, is irrelevant to the interpretation of these pre-acquisition policies. We think it plain that the insured's rights under the policy are fixed at the time of their issuance. It is also plain that when plaintiff acquired the insured, it acquired not only its liabilities but also its assets, and among its assets was coverage for its actionable liability for

environmental damage it caused during the policy period. We are further satisfied that this conclusion is supported by *Unisys Corp. v. Insurance Co.*, 154 *N.J.* 217, 712 *A.*2d 649 (1998), the third of the *Pfizer* trilogy. There, plaintiff Unisys, an out-of-state corporation had acquired the Burroughs Corporation, a New Jersey corporation that had conducted business activities in a number of states, causing contamination in at least five. As we read the Court's opinion, it held that plaintiff's coverage rights were subject to the same multi-site choice of law rules that would, under *Gilbert Spruance Co. v. Pennsylvania Mfrs.*, 134 *N.J.* 96, 629 *A.*2d 885 (1993), have applied to Burroughs had the acquisition not taken place. Thus, as here, it is not plaintiff's nexus with New Jersey at the time the acquisition takes place that is dispositive, but rather the acquired insured's nexus with New Jersey when the policy was issued and the events giving rise to liability occurred. *Compare HM Holdings v. Aetna Cas. & Sur.*, 154 *N.J.* 208, 712 *A.*2d 645 (1998) (New Jersey law does not apply where the acquired company, which caused environmental contamination outside New Jersey, was a New York corporation that had purchased insurance in New York and its main New Jersey nexus was its post-pollution acquisition by a New Jersey corporation); *Permacel v. American Ins. Co.*, 299 *N.J.Super.* 400, 414, 691 *A.*2d 383 (App.Div.1997) (New Jersey law did not apply to a New Jersey corporation whose policies of insurance were negotiated, issued and paid for by its out-of-state parent company).

The partial summary judgment appealed from is reversed, and we remand for further proceedings under New Jersey law.